# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 2, 2013 Session

## STATE OF TENNESSEE v. JAMES ALLEN POLLARD

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2006D2820    Monte Watkins, Judge**

_____

**No. M2011-00332-SC-R11-CD - Filed December 20, 2013**

_____

The defendant was convicted of felony murder, first degree premeditated murder, and especially aggravated robbery. After merging the murder convictions, the trial court imposed consecutive sentences of life for the murder and eighteen years for the especially aggravated robbery. On appeal, the Court of Criminal Appeals affirmed the convictions but remanded to the trial court for a proper determination of whether the sentences should be served consecutively or concurrently. We hold that, when a trial court places findings on the record to support its sentencing decision, the applicable standard of appellate review for a challenge to the imposition of consecutive sentences is abuse of discretion with a presumption of reasonableness. Because, however, the trial court failed to address the factors required to impose consecutive sentences based on the dangerous offender classification, we affirm the judgment of the Court of Criminal Appeals and remand to the trial court for a new sentencing hearing.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed; Case Remanded to the Trial Court**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Rachel West Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Debbie Housel, Leticia Alexander, and Deshea Dulany Faughn, Assistant District Attorneys General, for the appellant, State of Tennessee.

Richard Lewis Tennent (at trial and on appeal) and Edward J. Gross (at trial), Nashville, Tennessee, for the appellee, James Allen Pollard.

**OPINION**
**I. Facts and Procedural History**

At approximately 11:26 a.m. on March 24, 2006, officers of the Metropolitan Police Department of Nashville and Davidson County responded to a 911 report of a shooting at 301 North Eighth Street. Upon their arrival, they found the body of twenty-five-year-old Jamil Branhan (the "victim") lying on the living room floor of his apartment with two gunshot wounds to his head. There was no evidence of a forced entry.

During their investigation, Detectives Jeff Wiser and Michael Windsor traced the victim's last accepted phone call to Lakeisha Hooten. Describing her as "a person of interest," the detectives interviewed her on five separate occasions over a period of months. Initially, Ms. Hooten implicated two individuals by name, both of whom were eliminated as suspects upon further inquiry. During her fifth interview, however, she "finally broke down," informing the detectives that her boyfriend, James Allen Pollard (the "Defendant"), was involved in the incident.

The detectives conducted a video-recorded interview with the Defendant. After being informed of and waiving his Miranda rights, the Defendant stated that on the night of the shooting Ms. Hooten had arranged for him to meet the victim at his apartment to purchase a "dime sack"[1] of marijuana, as he had done on prior occasions. Admitting that he had a .38 caliber firearm in his pocket when he arrived at the apartment, the Defendant claimed that the victim was "gone on something," got "spooked" when he saw the Defendant's weapon, and, at that point, retrieved his own gun, a nine-millimeter semi-automatic. The Defendant told the officers that he drew his gun, and, during a struggle with the victim, his gun discharged. He acknowledged that he shot a second time, claiming that he did so when the victim raised his arm and pointed the semi-automatic in his direction. The Defendant also asserted that the victim fired his own gun once during the episode. After initially denying to Detectives Wiser and Windsor that he had "take[n] anything," the Defendant eventually admitted that after he shot the victim he took his weapon and his PlayStation.

The Defendant was charged and arrested. Later, the Davidson County Grand Jury indicted the Defendant on three counts: (1) felony murder; (2) premeditated murder; and (3) especially aggravated robbery.

At trial, the State presented the Defendant's video-recorded statement as evidence. Other testimony offered by the State established that the victim's mother, Marilyn Branhan,

---

[1] A "dime sack" refers to the amount of marijuana that can be purchased for ten dollars. Merriam-Webster, http://www.merriam-webster.com/dictionary/dime (last visited Dec. 13, 2013). The Defendant described this amount as two grams.

had become concerned after not being able to contact her son and had asked the apartment manager to check inside his unit. The apartment staff discovered the body, the police were notified, and several items were found missing from her son's apartment, including his PlayStation, gun, keys, and cell phone. An empty gun holster was found in a bin inside the bedroom.

Officers determined that the victim suffered two gunshot wounds, one to the chin and one to the temple. No shell casings were found in the apartment, and no bullet holes were found in the walls. Further testimony established that the victim's nine-millimeter semi-automatic would have ejected shells if fired. A forensic scientist with the Tennessee Bureau of Investigation concluded that the bullets causing the death of the victim were .38 caliber, typically fired from a revolver rather than a semi-automatic pistol.

A search of the apartment did not yield any evidence indicating that the victim had been dealing illegal drugs. Other witnesses, including the victim's girlfriend, Reshena Barnes, and a co-worker, Rose Reese, testified that the victim, who was employed at AutoZone, did not sell drugs.

Anthony Bowers, a federal inmate who had shared a cell with the Defendant, testified that the Defendant informed him that his girlfriend had arranged a meeting with the victim so that the Defendant could "rob him for some marijuana." According to Bowers, the Defendant claimed that he drew his revolver after the victim became suspicious and that, when the victim struggled and attempted to arm himself, the Defendant shot the victim in the head. Bowers stated that the Defendant admitted taking some marijuana, a cell phone, and a pistol from the apartment, and he also admitted shooting the victim a second time to ensure that he would not be identified. The Defendant explained to Bowers that he had been arrested only because his girlfriend "broke down" and told the investigating detectives the truth; he further recommended to Bowers that using a revolver was the better practice in a killing because it did not leave shell casings.

The forensic pathologist who performed the autopsy concluded that one of the bullets entered the left side of the victim's chin, breaking his chin and lacerating his tongue, causing him to swallow a moderate amount of blood. More blood was found in his lungs, indicating that the victim was still alive after this shot. A second bullet, fired within six inches, entered the victim's left temple, fracturing the brain and portions of the brain stem, rendering the victim immediately unconscious. The victim's body contained minimal levels of marijuana and had a blood alcohol content of .04.

Although the Defendant chose not to testify, three witnesses described him as a "good kid," a hard worker at his full-time job, and a reliable person.

At the conclusion of the trial, the jury found the Defendant guilty on all charges. The trial court merged the felony murder conviction with the first degree premeditated murder conviction and imposed consecutive sentences of life for the murder and eighteen years for the especially aggravated robbery. As support for consecutive sentencing, the trial court ruled that the Defendant qualified as a "dangerous offender whose behavior indicate[d] little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4) (2006).

On direct appeal, the Court of Criminal Appeals affirmed the Defendant's convictions, finding no merit in the Defendant's several allegations of error during the course of the trial, and upholding the length of each of the two sentences. Because, however, the trial court had failed to specifically address underlying factors essential to a dangerous offender classification, as set forth in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), the Court of Criminal Appeals remanded that issue to the trial court for reconsideration of whether the sentences should be served consecutively or concurrently. State v. Pollard, No. M2011-00332-CCA-R3-CD, 2012 WL 4142253, at *21 (Tenn. Crim. App. Sept. 17, 2012); see also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002).

This Court granted the State's Rule 11 application to determine the appropriate standard of appellate review for consecutive sentencing, namely: (1) whether the abuse of discretion standard of review that this Court adopted in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), regarding the length of sentences, and in State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012), as to alternative sentences, should apply to consecutive sentencing; and, if so, (2) whether the trial court should still be required to make specific findings of fact on the record to support an imposition of consecutive sentences based upon the dangerous offender classification as required by our decision in Wilkerson, 905 S.W.2d at 939.

## II. Analysis

The State asks this Court to formally adopt the abuse of discretion standard of review with a presumption of reasonableness for an appeal of the imposition of consecutive sentences, notwithstanding the statutory language providing for de novo review with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(a), (d) (2010).[2] The State submits that our decisions in Bise and Caudle, coupled with the discretionary language in Tennessee Code Annotated section 40-35-115, which governs consecutive sentencing,

---

[2] Section 40-35-401(d) provides as follows:

When reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct.

logically require such a result.

## A. Historical Background

The Tennessee Criminal Sentencing Reform Act of 1982 (the "1982 Act") completely overhauled the state's sentencing structure. See Act of Apr. 28, 1982, ch. 868, 1982 Tenn. Pub. Acts 556, 561-62 (repealed 1989); David L. Raybin, Tennessee Criminal Sentencing Reform Act of 1982: Practice and Procedure, 18 Tenn. B.J. 36, 36 (1982) [hereinafter Raybin, 18 Tenn. B.J.]. This legislation, which implemented sentencing ranges for offenses, created a comprehensive sentencing scheme designed to establish "fair and consistent treatment of all defendants by eliminating unjustified disparity in sentences." Tenn. Code Ann. § 40-35-102 (1982). Trial judges, rather than juries, were empowered to impose sentences consistent with the purposes and principles of the 1982 Act. Raybin, 18 Tenn. B.J. at 37. Although the 1982 Act did not originally provide a standard of review on appeal, an amendment in 1985 provided for de novo review without a presumption of correctness. Act of Dec. 11, 1985, ch. 5, § 31, 1985 Tenn. Pub. Acts 22, 34 (repealed 1989).

In 1989, the General Assembly amended the 1982 Act. Act of May 24, 1989, ch. 591, 1989 Tenn. Pub. Acts 1169 (the "1989 Act"). Among other revisions, the new legislation provided for de novo appellate review with a presumption of correctness for the "length, range or the manner of service of the sentence imposed" as well as for the "imposition of consecutive sentences." Tenn. Code Ann. § 40-35-401(a), (d) (addressing appeals by criminal defendants); id. § 40-35-402(a), (d) (2010) (addressing appeals by the State). Further, the 1989 Act required trial courts to first determine an appropriate sentence range and then adjust the sentence upward or downward from a binding "presumptive sentence" by considering the applicability of enhancement and mitigating factors. Bise, 380 S.W.3d at 692.

Subsequent rulings by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005), called into question the validity of certain provisions of the 1989 Act based primarily upon the right to trial by jury under the Sixth Amendment to the United States Constitution. See Bise, 380 S.W.3d at 696. In Apprendi, the Court considered whether the state trial judge, upon a finding by a preponderance of the evidence that the defendant had committed a "hate crime," could sentence the defendant to an "extended term" of imprisonment. 530 U.S. at 468-69. A New Jersey statute provided that the possession of a firearm for an unlawful purpose was punishable by five to ten years' imprisonment. Id. at 468. Another statute, however, authorized New Jersey trial judges to impose an extended sentence between ten and twenty years upon a finding by a preponderance of the evidence that the defendant committed the crime with the "purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or

ethnicity." Id. at 468-69 (quoting N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999-2000) (repealed 2002)). The Court observed that submitting facts to the jury as to every element of a crime, which must be proven beyond a reasonable doubt, provides procedural protection against the risk of erroneously depriving a defendant of his or her liberty. See id. at 483-84. After concluding that the "hate crime" determination was an element of the crime rather than a sentencing factor, id. at 493, the Court struck down the legislation as violating not only the Sixth Amendment right to trial by jury but also the Due Process Clause of the Fourteenth Amendment, which requires proof beyond a reasonable doubt of every fact, other than a prior conviction, that results in an increase of punishment beyond the statutory maximum. Id. at 490 (finding that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed," and that all facts resulting in criminal penalties must be proven beyond a reasonable doubt (quoting Jones v. United States, 526 U.S. 227, 252-53 (1999) (Stevens, J., concurring))).

Similarly, in Blakely, the Court considered the propriety of an "exceptional" sentence—a sentence above the top of the standard range but below the statutory maximum for the offense—imposed by a Washington state trial judge who had determined that the defendant had acted with "deliberate cruelty." 542 U.S. at 298. Washington's sentencing act authorized a trial judge to impose a sentence above the "standard range" if the judge found the presence of an aggravating factor that justified such a departure based on "substantial and compelling reasons." Id. at 299. A judge could not, however, under any circumstances, impose a sentence beyond the "statutory maximum" for a given felony. Id. at 303. The state argued that, because the sentence imposed fell within the applicable statutory range of the felony, no Apprendi violation existed. Id. The Court rejected this argument and ruled that the "statutory maximum," for purposes of Apprendi, is the sentence "a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. Because the increase in the sentence was based upon "deliberate cruelty," a fact that was neither found by the jury nor admitted by the defendant, the Court held that the sentencing procedure violated the Sixth Amendment right to a jury trial. Id. at 313-14.

Finally, the Booker Court consolidated two cases, United States v. Booker, 375 F.3d 508 (7th Cir. 2004), and Fanfan v. United States, No. 03-47, 2004 WL 1723114 (D. Me. June 28, 2004), and addressed whether the Federal Sentencing Guidelines violated the Sixth Amendment. Booker, 543 U.S. at 226. In one of the cases, the district judge had increased the defendant's sentence after making factual determinations that had not been considered by the jury, whereas the district judge in the other case had refused to increase the defendant's sentence in view of the ruling in Blakely. 543 U.S. at 227, 228-29. While recognizing that the district judges' discretion to impose a sentence within the sentencing

range did not violate the Sixth Amendment, id. at 233, the Court determined that a departure from the mandatory sentencing range upon a finding of aggravating or mitigating circumstances, which were not reflected in the jury verdict or admitted by the defendant, did, id. at 244. The Court warned that, although the removal of factfinding from the jury may appear merely convenient and efficient, the infringement "upon this sacred bulwark of the nation [is] fundamentally opposite to the spirit of our constitution; and that, though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concerns." Id. (quoting 4 William Blackstone, Commentaries on the Laws of England 343-44 (1769)). Thus, the Court struck down the Guidelines' mandatory application as well as the de novo standard of appellate review for sentences that departed from the applicable range. Id. at 259.

Our 1989 Act contained the same constitutional flaw as the statutes at issue in Apprendi, Blakely, and Booker. The presence of enhancement factors, as determined by the trial judge rather than the jury, authorized an increase above the "presumptive sentence," which was otherwise mandatory. State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007); David L. Raybin, *State v. Gomez*: Tennessee Sentencing Law Violates the Sixth Amendment, 43 Tenn. B.J. 24, 26 (2007). In direct response to the Supreme Court rulings in Blakely and Booker, Governor Phil Bredesen created a Task Force to propose amendments designed to remedy any constitutional infirmities. Bise, 380 S.W.3d at 696. In 2005, pursuant to the recommendations made by the Task Force, the General Assembly adopted several amendments that eliminated a mandatory "presumptive sentence" and made the enhancement and mitigating factors advisory only. Id. at 697-98.

Although the statutory language promulgating the standard of appellate review remained unchanged after the 2005 amendments—de novo with a presumption of correctness—this Court in Bise held that

> because the General Assembly, in an effort to bring the 1989 Act into compliance with Apprendi, Blakely, and Booker, made advisory the minimum sentence that should be imposed and the enhancement and mitigating factors that might be considered, the 2005 amendments also effectively abrogated the de novo standard of appellate review [in our statutory scheme]. . . . [T]oday we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.

Id. at 707.

-7-

Unlike a judicial determination that increases the penalty for a crime beyond the statutory maximum allowed by Apprendi, alternative sentencing and consecutive sentencing decisions do not implicate Sixth Amendment concerns. See State v. Allen, 259 S.W.3d 671, 689-90 (Tenn. 2008). In Allen, this Court made the following observations:

> The decision whether to impose consecutive sentences for multiple crimes is a decision about the manner in which a defendant serves his or her multiple punishments. Whether or not to "stack" sentences for multiple crimes is therefore akin to a trial court's decision as to how and where a defendant serves his sentences: on probation, on community corrections, in split confinement, or in the penitentiary. Apprendi and Blakely simply do not require the jury to determine the manner in which a defendant serves multiple sentences.

Id.; see also Oregon v. Ice, 555 U.S. 160, 169 (2009) ("[L]egislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in Apprendi."). Nevertheless, in State v. Caudle, this Court extended the abuse of discretion standard of appellate review, accompanied by a presumption of reasonableness, to alternative sentences. 388 S.W.3d at 278-79.

Initially, this Court acknowledged that the 2005 amendments rewrote the statute addressing the manner of service of a sentence, Tenn. Code Ann. § 40-35-102(6) (2006), in its entirety. Caudle, 388 S.W.3d at 278. These changes, which replaced binding considerations with advisory ones, were identical to the revisions made to the statutes affecting the length of a sentence. David L. Raybin, The *Blakely* Fix: New Tennessee Law Restores Judicial Discretion in Criminal Sentencing, 41 Tenn. B.J. 14, 21 (2005) (noting that Tennessee Code Annotated section 40-35-102(6)'s language providing for a "'presumption' that an individual was a favorable candidate for alternative sentencing options" was altered in 2005 to replace the "presumption" with an advisory consideration, and recognizing that this alteration was identical to the changes made to the statute affecting the length of sentence). In addition, this Court recognized that appellate review for both types of sentencing decisions should be governed by the same standard. Caudle, 388 S.W.3d at 278. Tennessee Code Annotated section 40-35-401(a), (d) specifically provides for a de novo standard of appellate review, with a presumption of correctness, for the "length, range or the manner of service of the sentence" as well as issues that pertain to "the granting or denial of probation." Thus, we held in Caudle that the standard of review on appeal for alternative sentences should be identical to that of an appeal of the length of a sentence, and we concluded that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any

other alternative sentence."  388 S.W.3d at 278-79.

## B. Standard of Review for Consecutive Sentencing

Although our consecutive sentencing statute does not implicate Sixth Amendment principles and was unaffected by the 2005 amendments, we are convinced that the appropriate standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. First, Tennessee Code Annotated sections 40-35-401(a), (d) and -402(a), (d) contemplate the same standard of appellate review for the determination of the "length, range or the manner of service" of a sentence as well as "the imposition of consecutive sentences."  Thus, the General Assembly has expressed an intention to have all sentencing decisions, including consecutive sentencing, subject to the same standard of appellate review.  As held in Bise and Caudle, the standard is abuse of discretion with a presumption of reasonableness.  Second, the statutory language as to consecutive sentencing has always afforded broad discretion to the trial courts.  See Tenn. Code Ann. § 40-35-115(b).  The governing statute provides that "[t]he court may order sentences to run consecutively if the court finds by a preponderance of the evidence that" the defendant falls into one of seven delineated categories.  Id. (emphasis added).  So, unlike the alternative sentencing statute addressed in Caudle, the language in the consecutive sentencing statute did not require legislative modification to grant similar discretion.  Just as the 2005 amendments, as to length of sentence, served to make de novo review with a presumption of correctness irrelevant in light of the General Assembly's grant of broader discretion to trial courts, the discretionary language as to consecutive sentencing calls for the adoption of an abuse of discretion standard with a presumption of reasonableness.  Third, the 2005 amendments also signaled a general increase in the discretionary authority of the trial courts in regard to all sentencing decisions, including the decision of whether to impose consecutive sentences.  See State v. Dorantes, 331 S.W.3d 370, 392 (Tenn. 2011) ("Whether sentences are to be served concurrently or consecutively is primarily within the discretion of the trial court." (emphasis added)); State v. Lewis, No. W2012-00723-CCA-MR3-CD, 2013 WL 4080981, at *30 (Tenn. Crim. App. Aug. 9, 2013) (recognizing that all other sentencing decisions are reviewed under the abuse of discretion standard and finding "no reason for the imposition of consecutive sentencing to be treated differently"); State v. Edick, No. W2012-01123-CCA-R3-CD, 2013 WL 3130953, at *9 (Tenn. Crim. App. June 13, 2013) (concluding that the abuse of discretion standard with a presumption of reasonableness applies to consecutive sentencing); State v. Tynes, No. W2010-02511-CCA-R3-CD, 2013 WL 1043202, at *26 (Tenn. Crim. App. Mar. 13, 2013), perm. app. denied (Tenn. June 11, 2013) ("We review a trial court's decision to impose consecutive sentences for an abuse of discretion."); State v. Dodson, No. M2010-01047-CCA-R3-CD, 2011 WL 5831759, at *7 (Tenn. Crim. App. Nov. 21, 2011), perm. app. denied (Tenn. Apr. 20, 2012) ("The determination of concurrent or consecutive sentences is a matter left to the discretion of the

trial court and should not be disturbed on appeal absent an abuse of discretion."). But see State v. Taylor, No. M2011-02754-CCA-R3-CD, 2012 WL 5377809, at *9 (Tenn. Crim. App. Oct. 31, 2012) (retaining the de novo standard of appellate review for consecutive sentencing). For all of these reasons, we hold that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations.

By adopting this standard, we reject the Defendant's contention that the presumption of reasonableness should not apply to consecutive sentencing because our holdings in Bise and Caudle only refer to a "presumption of reasonableness [for] within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Bise, 380 S.W.3d at 707 (emphasis added); see also Caudle, 388 S.W.3d at 279. Because the Sentencing Act does not provide "ranges" for consecutive sentences, the Defendant maintains that the presumption should not apply.[3]

Our rationale in Bise illustrates the fallacy of this argument. Susan Renee Bise appealed the length of her sentence, arguing that the trial court erred in the application of the only enhancement factor. Bise, 380 S.W.3d at 688. The Court of Criminal Appeals agreed that the factor had been erroneously applied and modified the defendant's sentence downward, id., as authorized by statute, see Tenn. Code Ann. § 40-35-401(c)(2) (providing that the appellate court may "[a]ffirm, reduce, vacate or set aside the sentence imposed"). This Court, however, reinstated the sentence because the record demonstrated that the trial court, while in error as to the application of the enhancement factor, had otherwise considered the purposes and principles of sentencing and the sentence imposed was within the appropriate statutory range. Bise, 380 S.W.3d at 709-10. The underlying principle, of course, is that the trial court must be afforded broad discretion in its sentencing decisions and the presumption of reasonableness will apply unless the trial court fails to address on the record the principles and purposes of our Sentencing Act. Id. In Bise, we made the following observation:

> Although our holding today replaces the presumption of correctness and de novo standard of review with a presumption of reasonableness and abuse of discretion standard, we continue to agree that appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence. Therefore it is critical that trial courts adhere to the

---

[3] In the alternative, the Defendant urges this Court to adopt the standard of review employed by the federal courts—a two-step substantive/procedural reasonableness determination. Because this would require this Court to overturn our recent decisions in both Bise and Caudle and because our case law provides an adequate framework for appellate review, we decline to do so.

statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e): "When the court imposes a sentence, it <u>shall place on the record, either orally or in writing . . . the reasons for the sentence</u>, in order to ensure fair and consistent sentencing."

<u>Id.</u> at 705-06 n.41 (quoting Tenn. Code Ann. § 40-35-210(e)). Consistent with Tennessee Code Annotated section 40-35-210(e), our ruling in <u>Bise</u> specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal. <u>Bise</u>, 380 S.W.3d at 698-99 ("[T]rial courts [are] still required under the 2005 amendments to 'place on the record . . . the reasons for the sentence . . . .'" (quoting Tenn. Code Ann. § 40-35-210(e))).

In the context of consecutive sentencing, the presumption of reasonableness applies similarly, giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b):

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Any one of these grounds is a sufficient basis for the imposition of consecutive sentences. State v. Dickson, No. E2010-01781-SC-R11-CD, 2013 WL 5530670, at *11 (Tenn. Oct. 8, 2013) (citing State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003)). So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal. See Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); see also Bise, 380 S.W.3d at 705.

### C. Dangerous Offender Classification

We now turn to consider the impact, if any, that the adoption of the abuse of discretion standard accompanied by a presumption of reasonableness has on our holding in State v. Wilkerson, which sets out two additional factors to be considered before a defendant may be ordered to serve consecutive sentences based on the dangerous offender classification. See Tenn. Code Ann. § 40-35-115(b)(4). The State asserts that, under this standard, the appellate court should presume regularity, not error, from a silent record[4] and should not set aside the imposition of consecutive sentences for the mere failure to recite the specific findings as set forth in Wilkerson. We disagree.

In Wilkerson, this Court first considered the impact that the codification of the consecutive sentencing criteria in the 1989 Act had upon our rulings in Gray v. State, 538 S.W.2d 391 (Tenn. 1976), and State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). Wilkerson, 905 S.W.2d at 935-36. We observed that the statutory definition of "dangerous offender" came directly from Gray. Compare Gray, 538 S.W.2d at 393 ("A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."), with Tenn. Code Ann. § 40-35-115(b)(4) ("The defendant is a

---

[4] In Bise, we recognized that "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption" of reasonableness. 380 S.W.3d at 705-06 & n.41. This statement, however, did not create a presumption of regularity when the record was altogether silent. See id. at 705 n.41 ("[W]hile we are not faced with a set of circumstances in which no reasons were given in the record, we note that the trial court is in a superior position to impose an appropriate sentence and articulate the reasons for doing so. While we have the statutory authority to modify the sentence, the more appropriate course of action under such circumstances may be to remand to the trial court." (citations omitted)).

dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high."). Further, we determined that both Gray and Taylor provided the underlying rationale for consecutive sentencing and that the 1989 Act intended to codify their standards. Wilkerson, 905 S.W.2d at 936 ("This statute is essentially a codification of two Tennessee [S]upreme [C]ourt cases dealing with concurrent and consecutive sentencing. . . ." (quoting Tenn. Code Ann. § 40-35-115 sentencing commission cmts.)). Applying the rationale from both Gray and Taylor, this Court observed as follows:

> Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. In addition, the Sentencing Reform Act [of 1989] requires the application of the sentencing principles set forth in the Act applicable in all cases. The Act requires a principled justification for every sentence, including, of course, consecutive sentences.

Wilkerson, 905 S.W.2d at 938 (emphasis added). In consequence, before imposing consecutive sentences based upon the dangerous offender classification, trial courts must conclude that the evidence has established that the aggregate sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts." Id. This Court has consistently upheld this ruling. See, e.g., Dorantes, 331 S.W.3d at 391-92; Imfeld, 70 S.W.3d at 708; Lane, 3 S.W.3d at 461. The adoption of the abuse of discretion standard with the presumption of reasonableness has not eliminated this requirement.

### D. Consecutive Sentences in this Case

To summarize, because the dangerous offender classification is the most subjective to apply, the record must also establish that the aggregate sentence reasonably relates to the severity of the offenses and that the total sentence is necessary for the protection of the public from further crimes by the defendant. See Lane, 3 S.W.3d at 461 (recognizing that two additional findings must be made prior to ordering consecutive sentences only under the dangerous offender category). Thus, when trial courts fail to include the two additional findings before classifying a defendant as a dangerous offender, they have failed to

-13-

adequately provide reasons on the record to support the imposition of consecutive sentences.

In this instance, the trial court merely found the Defendant to be a "dangerous offender" as defined by statute and imposed consecutive sentences. As pointed out by the Court of Criminal Appeals, the trial court must consider the two additional Wilkerson factors, and whether the proof supports their presence, in order to properly impose consecutive sentences based on the dangerous offender classification. The trial court's statement that the behavior of the Defendant "indicate[d] little or no regard for human life, and [that he had] no hesitation for committing a crime, in which [the] risk to human life is high," Pollard, 2012 WL 4142253, at *21, is insufficient because it fails to demonstrate that the imposition of consecutive sentences reasonably relates to the severity of the offenses or that the total sentence is necessary to protect the public from the Defendant. See Wilkerson, 905 S.W.2d at 939.

Where, as here, the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority. Faced with this situation, the appellate court has two options: (1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences. See Bise, 380 S.W.3d at 705 & n.41. Here, because the considerations required under Wilkerson involve a fact-intensive inquiry, we agree with the Court of Criminal Appeals that the better course is to remand to the trial court for consideration of the Wilkerson requirements in determining the propriety of consecutive sentencing.

### III. Conclusion

The abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for all sentencing decisions. The standard applies when the trial court properly addresses the purposes, principles, and considerations for its sentence on the record. Further, the trial court must consider the factors set forth in Wilkerson prior to imposing consecutive sentences based upon the dangerous offender classification. Because the trial court did not do so in this instance, the judgment of the Court of Criminal Appeals is affirmed, and the cause is remanded to the trial court for reconsideration as to whether the sentences should be served consecutively or concurrently. Costs of this appeal are taxed to the State of Tennessee.

_____
GARY R. WADE, CHIEF JUSTICE

-14-