# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 24, 2013 Session

## STATE OF TENNESSEE v. STANLEY JASON DANIELS

**Appeal from the Criminal Court for Claiborne County**
**No. 2012-CR-1203      E. Shayne Sexton, Judge**

---

**No. E2013-00694-CCA-R3-CD - Filed January 16, 2014**

---

JOHN EVERETT WILLIAMS, J., dissenting.


In keeping with the directions provided in *State v. James Allen Pollard*, No. M2011-00332-SC-R11-CD, 2013 Tenn. LEXIS 1011 (Tenn. Dec. 20, 2013), the majority takes a reasonable (and what I feel may be the preferred) action suggested by the Tennessee Supreme Court and elects to simply remand this case due to the trial court's failure to discuss some of the seven legally-relevant factors (listed in *State v. Electroplating*, *Inc*., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)) during its sentencing soliloquy. Like the majority, I too believe that trial courts should endeavor to address each and every criterion discussed in *Electroplating* during their judicial diversion decisions, and I urge them to do so in order to avoid having their cases remanded. In this case, however, I would address the trial court's omission by simply choosing the other option provided by our supreme court in *Pollard*: "conduct[ing] a *de novo* review to determine whether there is an adequate basis" for the trial court's decision. *See Pollard*, 2013 Tenn. LEXIS 1011, at \*32.

In the case at bar, both the majority and the defendant acknowledge that the trial court expressly considered four of the required seven factors when it denied the defendant's judicial diversion application. The defendant contends that the three omitted factors were: (1) whether the defendant was amenable to corrections; (2) his physical and mental health; and (3) whether judicial diversion will serve the interest of the public as well as this defendant. I would submit that the trial court necessarily considered the defendant's amenability to correction (and found this factor to weigh in the defendant's favor) when it granted him a fully probated sentence. With respect to the second factor, the record reflects that this defendant's physical and mental health was either fair or unremarkable, which is neutral with respect to the judicial diversion determination. Finally, during the sentencing hearing the trial court expressed great concern that the interest of the public was not served by allowing judicial diversion in this case and thereby allowing the defendant the possibility

of avoiding any criminal record. Considering these three factors—one positive, one neutral, and one negative—together, I see nothing that significantly affects the judicial diversion analysis undertaken by the trial court.

The majority warns the trial court not to place too great of an emphasis on the fact that this defendant was a sworn police officer, explaining that police officers are still generally eligible for diversion. I believe that the trial court would likely agree with this observation and that, by its comments, the trial court was not imposing any sort of *per se* bar against a police officer accused of this type of crime receiving diversion. I believe that the trial judge was merely expressing his extreme displeasure that a sworn corrections officer would violate his oath of office so flagrantly. This displeasure is understandable. Perhaps the only type of conduct that a trial judge might find more reprehensible or damaging to society than a defendant's initial crime would be a crime perpetrated upon that very defendant after the judge has placed him or her in state custody. Such an assault calls into question the very integrity of our criminal justice system.

This is not a simple case of unwanted or offensive touching. While the defense attempts to minimize the outrageous facts of this case—describing what occurred as the defendant merely "allowing" the victim to perform fellatio upon him—my review of the facts leads me to a far different conclusion. The record reflects that this defendant was in complete control of this female inmate's every action. He controlled when, what, and even if she ate; when, what, and if she drank; when, what, and if she smoked; when and where she went to the bathroom; how, and at what time, she arrived at the new facility; and what conversation the two of them could have along the way. When exercising so much control over the actions of another, I would characterize the sex act performed as more akin to rape than a mere deviation from departmental policy.

Trial judges are the closest to the action, and their judgments should be given great weight. In this case, the choice is one between the defendant receiving a fully suspended sentence and receiving that plus an additional legal boon affording him the opportunity to avoid having any criminal record—all after he intentionally took sexual advantage of an inmate placed in his care. The circumstances of this case are on the upper end of the conduct that the statute sought to prevent. I believe that, upon this record, the trial judge displayed enough of his reasoning to allow me to affirm the denial of judicial diversion. Certainly, I can find nothing in the trial court's decision that leads me to believe the court abused its discretion.

_____
JOHN EVERETT WILLIAMS, JUDGE