# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs February 9, 2016

## STATE OF TENNESSEE v. TYLER FITZGERALD RAYBON-TATE

**Appeal from the Criminal Court for Davidson County**
**Nos. 2014-A-11, 2013-D-3033, 2013-D-3027, 2013-D-2782      Steve R. Dozier, Judge**

---

### No. M2015-00992-CCA-R3-CD – Filed March 14, 2016

---

The defendant, Tyler Fitzgerald Raybon-Tate, pled guilty to five counts of aggravated burglary; one count of theft of property valued at $10,000 or more; two counts of theft of property valued at $500 or less; one count of carjacking; one count of kidnapping; two counts of felony evading arrest in a motor vehicle; and one count of driving on a suspended license. The defendant had agreed to be sentenced as a Range II offender, and the court was to determine the alignment of the sentences. Subsequently, the court imposed eight-year sentences for each of the five counts of aggravated burglary; seven years for the theft of property over $10,000; eleven months and twenty-nine days for each of the two counts of theft of property $500 or less; seventeen years for carjacking; nine years for kidnapping; three years for one evading arrest charge and six years for the other; and six months for driving on a suspended license. Concluding that the defendant had an extensive record of criminal behavior and was a dangerous offender, the trial court ordered that the sentences for the carjacking conviction and for two aggravated burglaries be served consecutively, for a total effective sentence of thirty-three years. The defendant appealed, arguing that consecutive sentences should not have been imposed, for he was not a dangerous offender. Following our review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Tyler Fitzgerald Raybon-Tate.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

Initially, we note that, although the record does not include the other courts' judgments which are consecutive to the sentence being appealed in this matter, the parties agree in their briefs that the defendant's final effective sentence is fifty-one years. At the defendant's plea submission hearing, the State set out the proof against him, to which he stipulated:

In [case number] 2014-A-11, the State anticipates that proof at a trial would be that on Monday July 8th at approximately 8:53 a.m., Officer Graves was on Bell Road stopped at the traffic light at Mount View. While at the light he looked to his left and saw an individual who he recognized as being [the defendant]. As the officer recognized the defendant, he ran up the embankment towards the gas pumps in the Kroger parking lot. Officer Graves activated his emergency equipment and tried to maneuver through the traffic. He made his way into the Kroger parking lot, but lost sight of the defendant as the defendant ran up to the embankment toward the full pumps. While driving through the parking lot, the officer saw a female at the fuel pumps pointing toward the entrance of the parking lot that the officer had just come to. He then saw another female pointing at a red Ford Escape as it was pulling out of the parking lot onto Mount View Road.

The officer drove through the entrance and saw the vehicle run through the red light and right through the crossing traffic at the intersection. At which point, the vehicle turned left heading west on Bell Road.

Officer [Graves] tried to catch up with the vehicle at which point the vehicle ran another light and turned on . . . to [the] ramp to I-24 west increasing the speed – and it was being driven by the defendant – to approximately 100 miles an hour. The officer, based on public safety reasons, stopped the pursuit. . . .

In case [number 2013-D-] 3027, the State anticipates the proof would show that on June 17th, 2013, the victims, Mr. Enamula and Mr. Jarret[t] reported that their residence had been burglarized at 603 Nashville Lane. The victim reported that TVs, laptops, video games and a video game console [were] stolen and the rear door to the residence had been

forced open.

A neighbor called the police when he observed two males in the driveway and watched them go in and out of the house with TVs and other items. The neighbor asked one of the suspects if he called [for] help and the suspect yelled for the second suspect and then got in the driver's seat and both fled in the vehicle. The neighbor obtained the number of the tag that the . . . suspects fled in, which was described as being a 90's white Buick Century.

On June 18th, 2013, detectives were able to trace the tag number to Music City Wholes[ale] at 2415 Clarksville Pike. . . . [O]n that same day at approximately 3 o'clock p.m. the defendant was clearly observed on video pawning five Xbox 360 video games and used his identification and pawned them at Cash America at 848 Dickerson Pike. The games that[] were pawned by the defendant were the same ones that were taken from the residential burglary described previously. The defendant's pictures from the video surveillance matched the description given by the witness of the passenger with the short black dreadlocks.

Later on Thursday June 20th, 2013, at approximately 1:50 p.m. the defendant was observed exiting a green Ford Mustang with a brown convertible top and a temp tag. Police were tracking the defendant's ankle bracelet for an outstanding warrant for burglary and violation of community corrections. The police activated blue lights and sirens in an attempt to stop the defendant who was the only occupant of the vehicle and was positively identified as the defendant when he exited and reentered the vehicle.

The stop was attempted at Clarksville Pike near West Hamilton. Police lost sight of the defendant's vehicle, but tracked him until the GPS was only giving signals at I-24 East near Ewing Drive. Police found the defendant's ankle bracelet on the side of the interstate which had been cut and removed which was against a court order.

And fin[ally], . . . in case [number 2013-D-] 3033, the State would show first on June 8th, 2013, at approximately 8:54 a.m., the victim, Ms. W[hit]worth was in the parking lot of Kroger located at Mount View Road and Bell Road, the defendant approached her vehicle and jumped inside and told her to drive away. She did so because he was reaching around in a bag, giving her the impression that he was armed.

A short time later he grabbed her steering wheel and forced her to pull over, he then pushed her out of the vehicle at a nearby gas station. She did not know the defendant nor had . . . given him permission to have custody of her vehicle.

On June 11th, 2013, between 8:45 a.m. and 3:45 . . . p.m., a burglary occurred at the residence of Ada Wech, Ellis Beth Moore and Katherine Hamm . . . located at 418 Wingrove. Forced entry and exit [were] made through the front and side door. Stolen in the burglary were an LCD Magnavox TV, $175 cash, two Macbook laptops, silver Ipad, phone charger, and Xbox games.

Police were called to the scene and a report was made. A suspect was developed by a GPS tracking bracelet. On July 10th, 2013, at 8:59 a.m. the defendant was Mirandized by Detective Sheppard. He was ask[ed] [why] he would be at the location of the residential burglary. He stated if my ankle bracelet shows me there, then I was there with two other men[] and I would fence the property by other selling it on the street or taking items to the pawnshop. The defendant stated that he would have to look at the house to be certain.

At 12:45 p.m. on July 10th, the defendant was taken to the residence at 418 Wingate and he had stated that they parked to this location in a Lincoln Navigator. Entry was made through the side door and exited from the front door and property was taken. The victim did not give the defendant permission to enter her residence and steal her property.

And finally on June 12th, 2013, Ms. Villoh . . . reported her home had been burglarized while she was at work. She reported when [s]he returned home she noticed her back door appear[ed] to be kicked in. And her two TVs, a Kindle and sewing machine were missing.

All of those events in all of those cases took place here in Davidson County, and based on those facts the State recommends the previously recommended dispositions.

Testifying first at the sentencing hearing was the victim in the defendant's carjacking case. She said that she had been grocery shopping and was still in the parking lot when the defendant jumped into her car. He was angry, and she was afraid that he was going to kill her. For months after the crime, she was unable to sleep for more than forty-five minutes at a time and vomited several times a day for weeks. She now kept a

4

pistol nearby at all times. Since the crime, she had thirty-three medical visits and forty-six visits with a counselor. She is afraid of the dark and has been diagnosed with post-traumatic stress disorder ("PTSD"), depression, and anxiety. Her income has been limited because of her inability to travel, and she is afraid to leave her house for activities with friends.

The defendant testified that he was twenty-two years old, had been using drugs since age eleven or twelve, and committing crimes since he was a teenager. He had been diagnosed with PTSD, depression, anxiety, and as a bipolar schizophrenic. He had not been taking his medication at the time he committed the crimes. He accepted responsibility for the crimes he committed.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in imposing consecutive sentences.

We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying same deferential standard announced in State v. Bise, 380 S.W.3d 682 (Tenn. 2012) to trial court's consecutive sentencing decisions).

The trial court may, in its discretion, order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including that (2) the defendant is an offender whose record of criminal activity is extensive or (4) the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Id. § 40-35-115(b)(2)(4).

The defendant has an extensive record of serious, and some dangerous, felonies. Thus, the record easily supports the reasoning of the trial court for consecutive sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

5