IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 1, 2020

## STATE OF TENNESSEE v. JAMARCUS DEQUAN MURDOCK

**Appeal from the Circuit Court for Hardeman County**
**No. 18-188     J. Weber McGraw, Judge**

_____

### No. W2020-00244-CCA-R3-CD

_____

Aggrieved of his Hardeman County Circuit Court jury convictions of aggravated robbery, the defendant challenges the sufficiency of the convicting evidence for two of his convictions and the total effective sentence. We affirm the defendant's convictions but, because the trial court failed to make the requisite findings to support consecutive sentences based upon the dangerous offender category, we vacate the imposition of consecutive sentences and remand the case for the limited purpose of making the appropriate findings on this issue. Upon remand, the trial court should also correct the minor clerical error in the judgment form for Count 3.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Vacated and Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Jamarcus Dequan Murdock.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Mark E. Davidson, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Procedural History*

The Hardeman County Grand Jury charged the defendant in counts 1 and 2 with the December 9, 2017 aggravated robberies of the Ready Mart and Teresa Ann Myrick, in count 3 with the February 27, 2018 aggravated robbery of the Dollar General Store in Toone; and in Count 4 with the February 24, 2018 aggravated robbery of the Whiteville Food Mart. The trial court granted the defendant's motion to sever the offenses, and, on September 19, 2019, the defendant pleaded guilty as charged in count 4, and the trial court imposed a Range I, 10-year sentence for that conviction. Counts 1 and 2 proceeded to trial on September 23, 2019.

A Hardeman County Circuit Court jury convicted the defendant as charged, and the trial court imposed consecutive Range I sentences of 10 years for each of the defendant's convictions to be served concurrently with the 10-year sentence in count 4. On January 17, 2020, pursuant to a plea agreement with the State, the defendant pleaded guilty to the lesser included offense of the robbery of the Dollar General Store in count 3 in exchange for a Range I, six-year sentence to be served concurrently with the 20-year sentence. The defendant does not challenge the convictions or sentences for counts 3 and 4.

*Trial*

Teresa Myrick testified that on December 9, 2017, she went to the Ready Mart on Main Street in Bolivar to purchase cigarettes and chat with her friend, Charlene Hudson, who was working at the store that evening. Emily Duncan was also working at the store that evening. As Ms. Myrick prepared to leave, two men entered the store and "demanded what money we had on us." One of the men, whom Ms. Myrick later identified as the defendant, "waved the gun around, tapped on the glass that was blocking the cash registers, and he demanded money." Ms. Myrick relinquished "what I had in my pocket because my life was worth more than what little money I had in my pocket." Ms. Myrick said that she was "scared to death. I was scared to move. I was scared to breathe." She recalled the defendant's "hollering at them behind the counter while he . . . eased the gun down and then he'd bring it back up and he was shaking the whole time."

Ms. Myrick testified that in April 2018, she identified the defendant from a photographic lineup as the man who had held the gun during the robbery. She said that she had known the defendant for "[a] couple of years because . . . him and his brother and my nephew were friends."

During cross-examination, Ms. Myrick acknowledged that she "didn't have a lot of interaction with the defendant" before the robbery. She admitted that the perpetrators "had bandanas on with hoodies" that covered a large part of their faces. Nevertheless, she said that "it was a look in his eyes that night that gave away everything

-2-

to me and when I saw [the defendant's] picture it jumped out at me. When I looked at everybody else's, their picture didn't jump out at me." Ms. Myrick conceded that she did not recognize the defendant on the night of the robbery but said that she "knew he knew me because he wanted to call me by my name and I could tell he wanted to call me by my name because most of the kids in the neighborhood know me."

Charlene Hudson testified that she was working at the Ready Mart on December 9, 2017, when two men robbed the store at gunpoint. Ms. Hudson testified that she did not recognize either man "[w]hen they initially came in," but that, eventually, she recognized both of the perpetrators. She said that although both "had hoodies on," she was able to see part of their faces. At one point, the defendant "came behind the counter," and his mask "came down. I could see all of his face. I knew him anyway automatically when it dropped." She said that she had known the defendant and his mother for a long time. When the defendant demanded money, she "told him get it yourself. I turned around and got on the floor."

During cross-examination, Ms. Hudson admitted that she told defense counsel that the officers told her that the defendant had been involved in the robbery before showing her the photographic lineup, but she said "that was wrong. I was wrong for that. They didn't never call his name until after I pointed at the picture." She testified that, instead, they "just showed me the photos and asked me can I identify one of those that was at the store." She acknowledged that she was on the floor for part of the robbery but said that she had seen the defendant's face "at the counter" when "he had the gun in my face for a few seconds." Ms. Hudson said that, when the defendant "came in and said give me your money, I thought it was a joke, so I'm turning around, I said, 'You've got to be kidding me' and that's when I turned around and the gun was in my face." Ms. Hudson admitted that she was aware that Ms. Duncan had failed to identify the defendant, but she added, "Ms. Duncan couldn't identify nothing because she didn't see him. She was up under the cash register that he went in with her back facing the opposite direction."

Ms. Hudson said that she did not tell the police that the defendant was one of the perpetrators because she "didn't know his name was Jamarcus but I knew his face. I didn't never know his name. I just know whose child he is. I know the family." She testified that, had she known the defendant's name, she would have "told them exactly who it was." When pressed about her failure to identify the defendant before April 2018, she said, "Actually, you want to know the truth about the whole thing? The reason I didn't come [was] because I didn't want it to be him because I knew the family too well. That's why I didn't say anything at first."

Bolivar Police Department ("BPD") Investigator Dewayne Futrell testified that officers from the BPD responded to a call of an armed robbery at the Ready Mart on

North Main Street on December 9, 2017. Investigator Futrell went to the Ready Mart two days later to review the video surveillance recording. A copy of the video surveillance from the day of the offenses was exhibited to his testimony and played for the jury. During cross-examination, Investigator Futrell acknowledged that the defendant could not be identified from the video recording.

Tennessee Bureau of Investigation ("TBI") Special Agent Matt Pugh testified that he was called in to assist in this and other armed robbery cases in Bolivar following an unrelated robbery that ended in a shooting. Based upon interviews conducted during his investigation, Agent Pugh identified four men, including the defendant, as possible suspects in the December 9, 2017 robbery of the Ready Mart. Agent Pugh created photographic arrays for each of the suspects and showed them to Ms. Myrick and Ms. Hudson. Ms. Hudson identified the defendant from one of the arrays, writing on the statement, "This looks like the guy that robbed me. He gave the orders and the gun[.]" Ms. Hudson identified Anthony Morrow from a separate array as the man who had participated in the robbery. Agent Pugh showed copies of the same photographic arrays to Ms. Myrick, and she also identified the defendant as "the one by me that had the gun."

Agent Pugh confirmed that the perpetrators wore hoodies and had their faces "partially covered." He added that the defendant "had his down around most of his face." Nevertheless, one of the women told investigators that "at one point one of them's mask came down and he had to readjust it and she was able to see his face at that point." In addition, both Ms. Hudson and Ms. Myrick indicated that they had known the defendant and his family for some time before the offenses.

During cross-examination, Agent Pugh acknowledged that the surveillance video recording did not show the defendant's mask slipping to show his "full face." Ms. Hudson and Ms. Myrick told Agent Pugh that they knew the defendant and his parents "[f]rom the neighborhood." Agent Pugh acknowledged that, despite saying that they had known the defendant for "a long time," neither woman mentioned the defendant as a suspect in the robbery until presented with the photographic arrays in April 2018. He conceded that the women's failure to identify a person whom they claimed to have known was "unusual."

During re-direct examination, Agent Pugh testified that the BPD did not work on the case at all between the date of the offenses and the time that the TBI became involved. As a result, no one from the BPD contacted the women about the identity of the perpetrators between December 2017 and April 2018.

Sixteen-year-old Anthony Morrow testified that on December 9, 2017, when he was 14 years old, he and the defendant, an older boy he knew from the neighborhood,

robbed the Ready Mart. He said that it was his role to "[t]ake the money" and put it into a bag. He did not have a gun. Mr. Morrow testified that the defendant planned the robbery. He identified himself and the defendant on the surveillance video recording taken during the robbery of the Ready Mart. Mr. Morrow acknowledged that, in exchange for his truthful testimony at the defendant's trial, the State had dropped its attempt to have his case transferred from the juvenile court.

During cross-examination, Mr. Morrow testified that he was in eighth grade at the time of the robbery and that the defendant was a senior in high school. He acknowledged that when he was initially questioned by the police, he told them that he was not a friend of the defendant's. Mr. Morrow conceded that he avoided a potential prison sentence by agreeing to testify against the defendant.

During redirect examination, Mr. Morrow testified that, regardless of whether he told the police that the two were friends, he had already told the police about the defendant's involvement in the robbery before he agreed to testify against the defendant. He maintained that the police did not bring up the defendant as a suspect and that, instead, "I brought it up." Mr. Morrow said that he knew both the defendant and the defendant's younger brother.

The State rested, and, following a full *Momon* colloquy, the defendant waived his right to testify and chose to present no proof. Based upon the evidence presented, the jury convicted the defendant as charged.

Neither party presented proof at the November 1, 2019 sentencing hearing for counts 1, 2, and 4. In setting a sentence of 10 years, the midpoint within the range, for each conviction, the trial court found that the defendant was a leader in the commission of the offenses and that he had no hesitation about committing the offense when the risk to human life was high. *See* T.C.A. § 40-35-114(2), (10). The court also found that count 1, the robbery of the Ready Mart, involved more than one victim. *See id.* § 40-35-114(3). The court agreed that, "the defendant because of his youth lacked substantial judgment in committing the offenses," *see id.* 40-35-113(6), but concluded that "the enhancing factors far outweigh that mitigating factor." The trial court ordered the defendant to serve the sentences in Counts 1 and 2 consecutively to one another based upon its finding that the defendant was a dangerous offender. *See* T.C.A. § 40-35-115(b)(4). The court ordered the 10-year sentence imposed in Count 4 to be served concurrently to that imposed in Counts 1 and 2, for a total effective sentence of 20 years' incarceration to be served at 85 percent by operation of law.

In this appeal, the defendant challenges the sufficiency of the convicting evidence for his convictions for the aggravated robbery of the Ready Mart and Ms. Myrick,

-5-

arguing that the State failed to establish his identity as the perpetrator. He also challenges the propriety of the consecutive alignment of the sentences imposed for those convictions.

*Sufficiency*

The defendant first asserts that the evidence was insufficient to support his convictions because the State failed to establish his identity as the perpetrator, noting the "inconsistencies with testimony from the State's key witnesses" and the lack of physical evidence connecting the defendant to the offenses. The State contends that the evidence was sufficient.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

The defendant does not challenge the evidence supporting the elements of the offenses, but instead argues that the State failed to establish his identity as the perpetrator. "The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Whether the State has established the defendant as the perpetrator of the charged offenses beyond a reasonable doubt is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015) (citing *State v. Thomas*, 158 S.W.3d 361 app. at 388 (Tenn. 2005)).

Here, both Ms. Myrick and Ms. Hudson identified the defendant as one of the two men who robbed the Ready Mart on December 9, 2017. Both women indicated that the defendant was the man seen brandishing a firearm on the surveillance video recording. At trial, both women positively identified the defendant as the man who robbed the store at gun point, and neither wavered in her identification despite vigorous cross-examination by the defendant. Additionally, Mr. Morrow testified unequivocally that he participated in the robbery of the Ready Mart with the defendant, that the defendant planned the robbery, and that the defendant was armed during the offense. None of the

witnesses offered inconsistent testimony regarding the defendant's identity as the perpetrator. Importantly, the jury, as the final arbiter of witness credibility, accredited the testimony of the three witnesses and convicted the defendant as charged. This evidence was sufficient to support the defendant's convictions.

*Sentencing*

The defendant contests the consecutive alignment of the sentences imposed by the trial court on grounds that the aggregate sentence was greater than that deserved for the conviction offenses. The State concedes that the trial court failed to make the necessary findings to impose consecutive sentences based upon the dangerous offender category but asks this court to "conduct a de novo review because the record clearly demonstrates the existence of both *Wilkerson* factors."

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, the supreme court held that the trial court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct before utilizing the "dangerous offender" category to impose consecutive sentencing, *see State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995), and "[t]he adoption of the abuse of discretion standard with the presumption of reasonableness has not eliminated this requirement," *Pollard*, 432 S.W.3d at 863.

The trial court imposed consecutive sentences in this case based upon its conclusion that the defendant was a dangerous offender. As the State concedes, the trial court totally failed, however, to make the appropriate findings to impose consecutive sentences based upon the defendant's being a dangerous offender. *See id.* With regard to the severity of the offenses, the trial court remarked generally that it had "observed the video with the gun pointed at people." With regard to the necessity of a lengthy sentence to protect the public from the defendant, the trial court made no finding at all. Under these circumstances, the trial court's ruling is not entitled to a presumption of reasonableness. *See Pollard*, 432 S.W.3d at 864. Thus, we are constrained to either "conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences" or "remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." *Id.* (citing *Bise*, 380 S.W.3d at 705 & n.41). Because we find that the record is inadequate for this court to conduct a de novo review, we vacate the imposition of consecutive sentencing and remand to the trial court for the consideration of the *Wilkerson* factors in determining whether consecutive sentencing on the basis of the dangerous offender category is appropriate in this case.

*Conclusion*

Based upon the foregoing analysis, we affirm the defendant's convictions but vacate the imposition of consecutive sentences in Counts 1 and 2 and remand the case for the limited purpose of making the appropriate findings on this issue. Upon remand, the trial court should correct the judgment form for Count 3 to reflect a sentence imposed date of January 17, 2020.

_____
JAMES CURWOOD WITT, JR., JUDGE