IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2016

## STATE OF TENNESSEE v. JAMES ALLEN PERRY

**Appeal from the Criminal Court for Carter County**
**No. 22966      Lisa D. Rice, Judge**

---

**No. E2015-01227-CCA-R3-CD – Filed May 13, 2016**

---

The Defendant, James Allen Perry, pled guilty to fifty-nine counts of especially aggravated sexual exploitation of a minor, a Class B felony; three counts of statutory rape by an authority figure, a Class C felony; and one count of sexual exploitation of a minor, a Class D felony. See Tenn. Code Ann. §§ 39-13-532, -17-1003, -17-1005. The trial court imposed a total effective sentence of 106 years. In this appeal as of right, the Defendant contends that the trial court erred in imposing partially consecutive sentences. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jeffery C. Kelly, District Public Defender; and David H. Crichton, Assistant District Public Defender, for the appellant, James Allen Perry.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Anthony Wade Clark, District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

Sergeant Chris Bowers of the Elizabethton Police Department was investigating the Defendant on allegations that he exposed himself to two nine-year old girls, showed

the girls pornography, and inappropriately touched one of the girls.[1]  Pursuant to that investigation, Sgt. Bowers executed a search warrant at the Defendant's home and seized the Defendant's computer.  Forensic analysis of the computer by the Tennessee Bureau of Investigation revealed numerous photographs of a young girl unrelated to Sgt. Bowers's investigation and a "commercial" video of a different girl performing fellatio on a man.  Sgt. Bowers was subsequently able to identify the girl in the photographs as S.W.[2]  Later, Sgt. Bowers obtained a media card that contained photographs of S.W. and another young girl consuming alcohol and "wrestling" inside the Defendant's home.[3]

In sentencing the Defendant, the trial court described the photographs found on the Defendant's computer as follows:

> [The computer] contain[ed] literally hundreds of photographs of the victim . . . .  The photographs appear[ed] to have occurred over varying years . . . from the time this child was about [ten] years old until she was about [thirteen].  The photographs depict[ed] the child playing with animals, playing with horses.  She look[ed] to be very young.  Then the photographs proceed[ed] on in sequence to depict the child in a dress and the photographs depict[ed] shots of panties appearing to be the same fabric that the child [was] wearing indicating that [the Defendant] [had] tried to take photographs of the child's underwear when she was extremely young.  There [were] photographs of this child's vaginal area which indicate[d] she [was] no where near even close to maturing sexually.  She [had] no pubic hair in many of these photographs.  There [were] photographs . . . of her in varying stages of nudity including wearing underwear and no other clothing.  It show[ed] her breasts.  There [were] photographs showing her buttocks.  And these type[s] [of] photographs occur[ed] over the period alleged in the indictment and she [was] wearing different underwear, different clothing.  There [were] also photographs of this child depicted in various sexual acts . . . .  There [were] multiple acts of a sexual nature.  There [was] sexual intercourse, vaginally speaking.  There [was] oral sex depicted in the photographs . . . showing [the Defendant's] face clearly with his mouth on the vagina of this child as it depict[ed] underwear that he [had] pulled back and that she [was] wearing in other photographs . . . .  There [was] a photograph of this child with a male penis in her mouth . . . .  There [were] emissions of semen on the child's underwear on the front of her body and on the back of her body.  And there [were] photographs of

---

[1] As part of the Defendant's plea agreement, the charges resulting from this investigation were dismissed.
[2] It is the policy of this court to refer to minors and victims of sexual offenses by their initials.
[3] The Defendant pled guilty to two counts of contributing to the delinquency of a child, a Class A misdemeanor, as a result of the actions depicted in these photographs.  See Tenn. Code Ann. § 37-1-156.

[the Defendant] kissing the child on her mouth . . . . [Some of the earlier photographs showed] the child appearing to be very much asleep, covered up in . . . either a . . . nightgown, or a tee-shirt of some sort, and underwear, and it [was] clear that [the Defendant] [was] taking these photographs of her while she [was] asleep in an attempt to raise her underwear and photograph her vagina, her buttocks, or her . . . chest while she [was] sleeping.

At the sentencing hearing, the victim's mother, F.B.,[4] testified that she had known the Defendant since the victim was two years old and that the Defendant was a close family friend. The Defendant was so close to the victim and her family that they would often spend holidays together. When the victim was a young girl, she started to "spend time" with the Defendant's granddaughter at the Defendant's home. Eventually, F.B. allowed the victim to spend weekends at the Defendant's home.

F.B. testified that the Defendant began to give the victim presents and that this increased around the time the Defendant's granddaughter moved away. F.B. estimated that the victim was eight or nine years old when this happened and that it was around this same time that the victim began to call the Defendant "Papaw." F.B. explained that the Defendant became a "grandfather figure" to the victim.

F.B. testified that the Defendant "spoiled [the victim] rotten . . . to a point that it was a little over excessive at times." F.B. explained that the Defendant would let the victim "eat a whole pie" in one sitting and would give her video games and clothes. F.B. recalled that when the victim was twelve or thirteen, the Defendant gave her a bathing suit that F.B. thought "was too racy" for the victim's age. As the victim got older, she would stay at the Defendant's house for weeks at a time during school breaks.

F.B. testified that she trusted the Defendant "very much" with the victim and that she "had no idea" about the sexual abuse the victim suffered in the Defendant's home. F.B. stated that since the Defendant was arrested, she had put a box in the victim's bedroom where the victim could put items that the Defendant "had given her" or that triggered "a bad memory." F.B. further testified that the victim became "withdrawn" and that her grades in school had declined since the Defendant's arrest. F.B. also testified that the victim was hesitant to leave her home and did not like being away from her step-father because she felt "safe with him." F.B. told the trial court that she believed the Defendant deserved "the absolute maximum" because he "groomed [the victim] to be susceptible to him" and "broke a trust."

---

[4] To further protect the privacy of the victim, we will refer to S.W.'s mother by her initials.

The Defendant claimed at his guilty plea submission hearing that he took the photographs of the victim at her behest. The Defendant explained that the victim wanted to use the pictures to make another girl angry. The Defendant claimed that he did not know the pictures were on his computer and that the victim "undoubtedly put them on there to try to send them to herself." The Defendant also initially claimed that he did not have sex with the victim and that all of the photographs of him with the victim had been staged. However, the Defendant eventually conceded to the State's factual basis for his guilty pleas.

In the psycho-sexual report prepared for the Defendant's sentencing hearing, the Defendant again claimed that he did not know that the pictures were on his computer. The Defendant told the examiner that the victim "was interested in a girl" and asked him to take the pictures. The Defendant further told the examiner that the victim deleted the pictures "before [he] saw them." The Defendant said that he felt like "the uncle that lets the children get away with some of the things that the mother and father would not let them do."

A statement of allocution written by the Defendant was read at the sentencing hearing. In the statement, the Defendant said that he "didn't mean for any of this to happen." The Defendant explained that he "let things get out of hand by letting kids get away with things and [he] got caught up in it." The Defendant asked for the victim and F.B. to forgive him. The Defendant said that he knew the victim and her family would "go on" with their lives and "put this behind [them] one day." The Defendant asked the trial court to "look on [this] being [his] first time in trouble and not have [him] die in prison."

The trial court went through a lengthy analysis of the applicable sentencing laws before imposing the Defendant's sentences. The trial court imposed the maximum possible sentence for all of the convictions. The trial court sentenced the Defendant to twelve years for all fifty-nine convictions of especially aggravated sexual exploitation of a minor, six years for all three convictions of statutory rape by an authority figure, and four years for the sexual exploitation of a minor conviction. The trial court ordered seven of the especially aggravated sexual exploitation of a minor convictions to be served consecutively, along with all three of the statutory rape by an authority figure convictions and the sexual exploitation of a minor conviction. All of the remaining convictions were ordered to be served concurrently, for a total effective sentence of 106 years.

In sentencing the Defendant, the trial court considered the purposes and principles of the Sentencing Act. See Tenn. Code Ann. § 40-35-103. The trial court noted that the Defendant did not have a long history of criminal conduct but that the Defendant did have prior convictions for possession of drug paraphernalia and violation of a protective order. The trial court also noted that there was no evidence that measures less restrictive

than confinement had been unsuccessfully applied to the Defendant. The trial court stated that the offenses the Defendant had been convicted of had been determined by the General Assembly to be "one of the more serious ones that anyone can face in this state."

In discussing the need to avoid depreciating the seriousness of the offense, the trial court described the Defendant's actions as follows:

> This is an extremely offensive, nauseatingly offensive, set of circumstances where this man pretend[ed] to be a loving grandfather figure and then lure[d] this young girl in and abuse[d] her to the point of full sexual activity, as her mother said, stealing her childhood, stealing her innocence, robbing her of something that she [could] never get back. And it has had serious and long lasting consequence in the court's opinion based upon the breach of trust and the abuse of the trusting relationship that he developed, apparently, with just the intent of abusing this child.

The trial court also gave great weight to what it viewed as the Defendant's lack of potential for rehabilitation. The trial court noted that the Defendant "groomed" the victim "over a long period of time" and that the Defendant did not "appreciate the wrongfulness of his conduct" in light of the fact that while he was abusing the victim, he tried "to bring in younger girls" and gave alcohol to one of the victim's friends. The trial court also noted that the Defendant had told the psycho-sexual evaluator that he had "never been in the criminal justice system" when he, in fact, had recent convictions. This caused the trial court to "question" the Defendant's "honesty."

In imposing partially consecutive sentences, the trial court found that the Defendant had been convicted for two or more statutory offenses involving sexual abuse of a minor. See Tenn. Code Ann. § 40-35-115(b)(5). In addressing the aggravating circumstances of the offenses, the trial court noted "the abuse of trust and the cultivation of [a] trusting grandfather-type relationship that [the Defendant] embarked on . . . with [the] victim." The trial court also noted that the sexual activity between the Defendant and the victim "went undetected for three years and, quite frankly, would not have ever been detected had the other two . . . victims not reported" the Defendant. The trial court went on, noting that the photographs "clearly depict[ed] [the] length of time" of the sexual abuse, showing the victim as a "very young" girl and then beginning to enter puberty.

The trial court also discussed the nature and the scope of the sexual acts, noting that they "were as comprehensive as you can get in a sexual situation . . . oral vaginal penetration, ejaculation, sexual battery, etc." and characterizing the acts as "extensive sexual abuse." The trial court then discussed the extent of the residual physical and mental damage to the victim, noting that the victim had withdrawn "from others," was no

longer outgoing, did "not engage in a lot of social activity" and that her family had to "engage in some . . . psychological games . . . to help [the victim] get through it." The trial court concluded that these aggravating circumstances justified partially consecutive sentences.

ANALYSIS

The Defendant contends that the trial court erred in imposing partially consecutive sentences. The Defendant argues that the trial court failed "to consider and articulate the sentencing considerations" supporting its decision. The Defendant further argues that the total effective sentence of 106 years was excessive, was not the least severe measure necessary to achieve the purposes for which the sentence was imposed, and was greater than what was deserved for the offenses. Finally, the Defendant argues that the total effective sentence amounted to a life sentence for him and that his actions were "not atypical of sexual exploitation cases." The State responds that the trial court did not abuse its discretion in ordering eleven of the Defendant's sixty-three sentences to be served consecutively.

When reviewing a trial court's imposition of consecutive sentences, "the presumption of reasonableness applies," which gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. Pollard, 432 S.W.3d 851, 861 (Tenn. 2013). "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." Id. at 862 (citing State v. Dickson, 413 S.W.3d 735 (Tenn. 2013)).

Here, the trial court concluded that consecutive sentences were warranted under subsection (5) of section 40-35-115(b). Subsection (5) provides that a trial court may impose consecutive sentences when the defendant

> is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or the victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Not all of the aggravating circumstances listed in subsection (5) need to be present to justify consecutive sentencing, and consecutive sentencing may still be appropriate under subsection (5) "even when one factor militates against [it] if the other aggravating

-6-

circumstances have been established and carry sufficient weight." State v. Doane, 393 S.W.3d 721, 739 (Tenn. Crim. App. 2011).

The record belies the Defendant's claim that the trial court failed "to consider and articulate the sentencing considerations" supporting its decision. The trial court discussed in detail all of the aggravating circumstances listed in subsection (5) and the purposes and principles of the Sentencing Act when imposing the Defendant's sentences. The trial court was particularly troubled by the abuse of trust in the Defendant's relationship of the victim, the extremely lengthy period of time these offenses went undetected, and the nature and scope of the sexual abuse the Defendant perpetrated on the victim.

The total effective length of a defendant's sentences will not be found to be excessive simply because it would extend beyond the expected lifetime of the defendant. State v. Robinson, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995). Nor should the age of a defendant necessarily limit the total effective length of the defendant's sentences. State v. Timothy Clayton Thompson, No. E2002-01710-CCA-R3-CD, 2003 WL 21920247, at *5 (Tenn. Crim. App. Aug. 12, 2003). "This court has often upheld consecutive sentencing with lengthy terms of incarceration relating to convictions for multiple sexual offenses." State v. David Lamar Hayes, No. M2002-01331-CCA-R3-CD, 2004 WL 1778478, at *9 (Tenn. Crim. App. Aug. 9, 2004) (citing six representative cases).

We see no reason to deviate from our past holdings in light of the horrendous nature of the Defendant's offenses; the escalating nature of the abuse the victim suffered; the lengthy period of time the Defendant's sexual abuse of the victim went undetected; the abuse of the Defendant's special relationship with the victim and her family; the fact that the Defendant's crimes likely would have gone undetected had he not attempted to harm other, younger, victims; and the Defendant's unrepentant and flippant statements to the trial court blaming the victim for his sexual abuse against her. Accordingly, we hold that the trial court did not abuse its discretion in imposing partially consecutive sentences for a total effective sentence of 106 years.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE