IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2016

**STATE OF TENNESSEE v. PAUL BRENT BAXTER**

**Appeal from the Circuit Court for Marshall County**
**No. 15-CR-85      Franklin L. Russell, Judge**

_____

**No. M2016-00049-CCA-R3-CD – Filed September 30, 2016**

_____

Defendant, Paul Brent Baxter, was convicted of three counts of aggravated assault and received concurrent sentences of fifteen years. On appeal, he argues that his sentences are excessive. We affirm the judgments, but we conclude, as a matter of plain error, that the judgments must be merged into a single conviction. Accordingly, the judgments of the trial court are remanded.

**Tenn. R. App. P. Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Donna Orr Hargrove, District Public Defender; Andrew Jackson Dearing III (on appeal and at trial) and Michael J. Collins (at trial), Assistant Public Defenders, for the appellant, Paul Brent Baxter.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General, Senior Counsel; Robert J. Carter, District Attorney General; and Weakley E. Barnard and Drew Wright, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Procedural History and Factual Summary*

On May 20, 2015, Defendant was indicted with three counts of aggravated assault. At trial, Emma Christina Rowe testified that she had been in a romantic relationship with Defendant for over two years. The couple lived together in Culleoka at the home of

Defendant's mother. On the night of May 24, 2014, the couple had an argument. When Defendant went to sleep, Ms. Rowe called her mother, who lived about twelve miles away in Cornersville. Ms. Rowe's mother drove to Culleoka and picked up Ms. Rowe.

On the following morning, around 8:00 a.m., Defendant called Ms. Rowe and asked if he could pick her up. Ms. Rowe answered negatively and hung up. Defendant called back immediately and again requested to pick up Ms. Rowe. She declined once more, and Defendant then offered to provide her with prescription pills if she would agree to let him pick her up. Ms. Rowe testified that she had previously broken her back in a horrific automobile accident and was addicted to pain medication. However, Ms. Rowe again refused to allow Defendant to pick her up. Defendant then told Ms. Rowe that his mother "put a warrant on [Ms. Rowe] for a theft." Ms. Rowe inquired about the reason for the warrant, and Defendant said that she had stolen jewelry from his mother. Defendant admitted, however, that he and his mother knew that Ms. Rowe actually had not done so. Defendant said that his mother would "drop" the warrant, if Ms. Rowe agreed to let Defendant pick her up. Feeling frightened, Ms. Rowe agreed.

Defendant and his mother arrived to pick up Ms. Rowe in a two-door car, which Defendant's mother was driving. When Ms. Rowe came to the car, Defendant got out of the passenger side, moved the passenger seat forward, and let Ms. Rowe into the backseat. Defendant then slid the passenger seat back and sat in the front seat. Defendant's mother began driving them back to her house. At this point, Defendant and his mother were being "really nice" to Ms. Rowe.

After three or four minutes of travel, Defendant "started yelling" at Ms. Rowe, saying, "Why did you leave me for? You'll never leave me again." While yelling, Defendant turned around, hit Ms. Rowe in the face with his open palm "quite a few" times, and also pulled her hair. Then, Defendant began squeezing her neck with his right hand "to the point where [she] couldn't breathe." Ms. Rowe felt like she was "going to pass out," so she hit Defendant's head with a glass Sundrop bottle, which she had brought with her. Defendant released Ms. Rowe's neck and then "punched" her right eye with his closed fist. Defendant told his mother to stop the car, which she did. Defendant opened the passenger side door, reached into the backseat, grabbed Ms. Rowe's hair, and pulled her out of the car through the space between the front seats. He then threw Ms. Rowe down onto the road and began "punching," "smacking," and "kicking" her "all over [the] face" while yelling about her leaving him. Ms. Rowe tried to shield herself with her hands.

Eventually, Defendant quit hitting Ms. Rowe. He pulled her up by her hair then grabbed her neck and shoved her into the passenger seat. Ms. Rowe quickly crawled into the backseat, attempting to put distance between herself and Defendant. Defendant's mother began driving the car toward Culleoka, and Defendant continued to hit Ms. Rowe

"a few more" times. Once they began driving on the interstate, Defendant stopped hitting Ms. Rowe.

When they returned to the home of Defendant's mother, Defendant left the car, went inside the house, and went to sleep on the couch. Ms. Rowe limped out of the car and sat on the porch with Defendant's mother. Ms. Rowe was in "extreme physical pain." Her face hurt and her right leg was "hurting really bad[ly]." She told Defendant's mother that she thought her leg was broken. Defendant's mother allowed Ms. Rowe to use the phone, and Ms. Rowe called her mother and told her to pick her up at a store located about half a mile away. Defendant's mother accompanied Ms. Rowe to the store, and Ms. Rowe waited for her mother. When Ms. Rowe's mother arrived, she drove Ms. Rowe to the emergency room at Marshall Medical Center in Lewisburg.

Upon admission to the hospital, Ms. Rowe reported experiencing maximum pain on a scale of one to ten, which is considered extreme physical pain. An x-ray of Ms. Rowe's leg revealed a fracture near her ankle. A CAT scan of her head and face revealed multiple fractures around her left eye. All of these fractures were consistent with Defendant's behavior as described by Ms. Rowe. Medical personnel placed a splint on Ms. Rowe's leg, gave her crutches, and instructed her to visit an orthopedic doctor for additional treatment. Ms. Rowe followed this advice, and her leg was placed in a cast. She did not have full use of her right leg for approximately three months. In addition to the splint, Ms. Rowe was given pain medication and antibiotics.

Officer Mark Chandler of the Cornersville Police Department went to the emergency room to interview Ms. Rowe. He observed redness on her neck, marks on her left arm, scratches on her face, and bruising on her right eye. Photographs of these injuries were admitted into evidence.

The parties stipulated that at the time of the incident on May 25, 2014, Defendant "was enjoined or restrained by an Order of a Court of competent jurisdiction . . . from having contact or assaulting or attempting to assault Emma Rowe." Defendant did not testify. The jury convicted him as charged of three counts of aggravated assault, one based on serious bodily injury, another based on strangulation, and another based on violation of a court order. *See* T.C.A. § 39-13-102(a)(1)(A)(i), (iv), (c).

At the sentencing hearing, the State introduced the presentence report and some certified judgments. By the trial court's count, Defendant's criminal history contained over twenty misdemeanors, eleven felonies (after application of the twenty-four-hour rule), and over twenty revocations of probation or parole. Defendant was released on bond in Bedford County at the time he committed the offenses in this case and was later convicted of those offenses. The parties agreed that Defendant should be sentenced as a Range III persistent offender. The trial court found that three enhancement factors

applied, but the court did not find any mitigating factors. The trial court imposed concurrent fifteen year sentences, all to be served consecutively to the Bedford County convictions. After the trial court denied a motion for new trial, Defendant timely filed an appeal.

*Analysis*

Defendant's only argument is that the trial court abused its discretion by imposing maximum sentences. The State disagrees and also argues that Defendant has waived this issue due to inadequate argument in his appellate brief.

When an accused challenges the length, manner, or range of a sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In imposing a sentence, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf. T.C.A. § 40-35-210(b). "[A] trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(d)). The principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* T.C.A. § 40-35-103(2), (4).

To provide meaningful appellate review, the trial court must state on the record its reasons for the sentence chosen, including the mitigating and enhancement factors it considered. T.C.A. § 40-35-210(e). A non-exclusive list of mitigating and enhancement factors are provided in Tennessee Code Annotated sections 40-35-113 and -114. The

weighing of both mitigating and enhancement factors is left to the trial court's sound discretion, and a trial court's misapplication of a mitigating or enhancement factor will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.

Defendant was convicted of three counts of aggravated assault, a Class C felony. T.C.A. § 39-13-102(e)(1)(A)(ii). The sentencing range for a persistent offender convicted of a Class C felony is ten to fifteen years. T.C.A. § 40-35-112(c)(3). Defendant does not dispute the trial court's findings on the enhancement factors, and we agree that all three of them were applicable. As described above, Defendant has a very lengthy history of criminal convictions beyond those necessary to establish the appropriate range. T.C.A. § 40-35-114(1). Defendant also has a very lengthy history of failing to comply with the conditions of release into the community based on over twenty previous revocations of probation or parole. T.C.A. § 40-35-114(8). Additionally, Defendant was on bail when he committed these crimes. T.C.A. § 40-35-114(13). The State correctly asserts that Defendant has not identified any reason why his sentence is excessive, other than conservation of state resources. He has not argued that the trial court improperly failed to apply mitigating factors. We find that issue is without merit. The trial court imposed a within-range sentence after considering the facts of this case and the purposes and principles of our sentencing statutes. Defendant is not entitled to relief on this issue.

However, as a matter of plain error, we determine that the trial court erred by failing to merge all three convictions for aggravated assault into a single conviction. All three convictions were based on the same occurrence and were indicted as alternative theories of the same offense. *See, e.g.*, *State v. Dannaer Beard*, No. W2013-00502-CCA-R3-CD, 2014 WL 5465860, at *4-5 (Tenn. Crim. App. Oct. 28, 2014) (remanding for merger of two aggravated assault convictions where there was "only one assault and one victim"). Indeed, the first paragraph of the jury instructions expressly states: "The three counts in the indictment are alternate theories of the same one alleged crime. If the defendant is convicted under all three counts of the indictment, he can only be punished for one crime of aggravated assault." Accordingly, we remand for the entry of three new judgment forms reflecting the merger of those offenses into a single conviction for aggravated assault.

*Conclusion*

Based on the foregoing, the judgments of the trial court are affirmed, but we remand for entry of corrected judgments.

_____
TIMOTHY L. EASTER, JUDGE