IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 24, 2020

## STATE OF TENNESSEE v. SHONIQUE NECHELLE SMITH

**Appeal from the Criminal Court for Hamilton County**
**No. 302453, 302596, 303551      Barry A. Steelman, Judge**

_____

### No. E2019-01400-CCA-R3-CD

_____

Shonique Nechelle Smith, Defendant, appeals from the trial court's judgment revoking community corrections and requiring her to serve the balance of her sentence in incarceration. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and THOMAS T. WOODALL, J., joined.

Steven E. Smith, District Public Defender, and Elizabeth L. Williams, Assistant District Public Defender, Chattanooga, Tennessee, for the appellant, Shonique Nechelle Smith.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Brian C. Bush, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Guilty Plea and Sentence*

On May 8, 2018, Defendant pled guilty in fifteen different cases to eighteen criminal offenses. She was sentenced to concurrent terms of eleven months and twenty-nine days on eleven misdemeanor theft cases, concurrent terms of thirty days on three criminal trespass cases to be served concurrently with the theft sentences, two years each

for two E felony theft cases, four years for attempted possession of contraband in a penal institution, and four years for attempted tampering with evidence. The four felony sentences were ordered to be served on community corrections concurrently with each other but consecutively to the sentence for the misdemeanors. The effective sentence was eleven months and twenty-nine days to serve, and upon release from custody, four years in Phase II of the Hamilton County Community Corrections Program.

*Revocation Hearing*

Timothy E. Mott, Program Manager for the Hamilton County Community Corrections Program, testified that he began supervising Defendant upon her release from custody on August 28, 2018. The order assigning Defendant to the Phase II program required Defendant to "wear the electronic monitoring device, not use drugs or alcohol, submit to drug testing when requested[;] obey the work, school, counseling and curfew schedules established[;] and comply with all provisions of any behavior agreement." According to Mr. Mott, Defendant was placed on house arrest and was advised that she could only leave to search for a job, report to probation, or address a medical emergency. Defendant was also required to attend a drug treatment program operated by the Council for Alcohol and Drug Abuse Services (CADAS). In August 2018, Defendant falsely reported to Mr. Mott that she had attended the CADAS program. On August 31, 2018, Defendant tested positive for Nordiazepam, Oxazepam, Codeine, and Morphine. She was unable to provide a prescription for any of the substances. On September 3, 2018, Defendant was away from her home from 2:29 a.m. until 6:37 a.m. On nine other occasions in September, she failed to return home by 4:00 p.m. as required under the terms of her house arrest. She claimed that she was training to be a dispatcher at Millennium Cab Company and working at a cleaning service, but she failed to provide proof of her employment as requested by Mr. Mott. On September 14, 2018, Defendant tested positive for thirteen different substances, including methamphetamine. On September 18, 2018, Defendant was "kicked out" of the mandated New Freedom program for using her cell phone. On September 28, 2018, Defendant tested positive for fourteen substances, adding Xanax to the previous list. Mr. Mott said that Defendant failed to report on October 1, 2018. He attempted to contact Defendant several times. She finally called back and rescheduled her appointment for October 4 but again failed to report.

Mr. Mott filed his first violation report on October 10, 2018, claiming that Defendant violated the following conditions of her Community Corrections Behavior Contract: No. 7 which required her to follow the instructions of her probation officer; No. 8 which required her to refrain from using intoxicants or any controlled substance or mind altering drug; No. 13 which required her to provide a biological specimen for the purpose of DNA analysis and to pay a testing fee of $37.00; and No. 15 which required

her to remain on house arrest as directed by her probation officer. Mr. Mott said that he filed the violation report because Defendant "kept failing drug tests, failed to comply with instructions, [and was] repeatedly late for appointments." He testified that, although Defendant was required to attend the New Freedom classes, she only attended one class and was "kicked out." He said that she failed to do any community service and that she "[p]retty much was noncompliant the entire time" she was in the program.

Mr. Mott filed an "Addendum to Violation Report," alleging a new violation of her Community Corrections Behavior Contract. Mr. Mott stated that Defendant left her house address on September 28, 2018, and had not reported or made contact with him or his office in more than thirty days. The report stated that Defendant "has been declared an Absconder from Community Corrections."

Lakeasha Garner, Defendant's mother, testified that Defendant lived with her while on community corrections. She said that Defendant was working for a cleaning service and was training to be a dispatcher at a cab company. Ms. Garner testified that the cleaning service picked Defendant up for work around 7:30 a.m. and brought her home between 3:00 and 4:00 p.m. She said that, one time, the cleaning service called Mr. Mott because Defendant was intoxicated. Ms. Garner claimed that she took the Defendant to the cab company where she worked at night. She also said she also took Defendant to a methadone clinic. Ms. Garner volunteered that she went to the methadone clinic herself. Ms. Garner also admitted that she was involved in some of the thefts with her daughter.

Ms. Garner said that, after a "so-called girlfriend" came back into Defendant's life, Defendant "cut off her house-arrest band" and "r[a]n off with her." Ms. Garner said that Defendant was smart but that she had anger issues and had followed the wrong crowd. She said that all of her daughter's problems were caused by drugs. Ms. Garner claimed that Defendant had changed and now wanted to go to CADAS. Ms. Garner said that Defendant could live with her if released.

Defendant testified that, upon release from custody, she went through an orientation for community corrections. She said that she did not know she was supposed to go to CADAS until she failed the drug screens. She said that she went to CADAS in September and was admitted but that, because she had her son with her, they told her she "would [have to] come back to get [her] bed." She said that she was working for Mr. Jones's cleaning service and with Millennium Taxi Company during her time in community corrections. She said that she provided Mr. Mott with training papers from the cab company. She said that she attended one class at New Freedom but that she "was put out." She stated:

I wasn't complying because I was using, but I sat in Mr. Mott's office and told him, "Mr. Mott, I got a[n] issue. I got a problem." I don't see how he do[es]n't remember that, because I was in tears like I am now. It is what it is. I can't -- I gotta get some help.

On cross-examination, Defendant admitted that she was a drug addict and had been using drugs for four or five years, even while incarcerated from January to August 2018. She said she "got in [a] lethal relationship" with her girlfriend and that she "fell off" and "started shooting heroin." Defendant admitted that she was with her girlfriend between October 2018 and March 2019. She said Mr. Mott contacted her boss trying to verify her employment, so she stopped work because she knew that she would "be getting violated because of my drug scenes." When asked about her arrest in Knoxville, Defendant claimed that her girlfriend "kicked [her] out," that a friend took her to Knoxville, and that she went into Walmart and was arrested for trespass and theft because Walmart "was familiar with [her]."

At the conclusion of the revocation hearing, the trial court found that Defendant was not cooperative with Mr. Mott and that her record on community corrections "was replete" with "noncompliance." The court found that Defendant failed to complete CADAS, failed to go to CADAS "when she said she did," and that when she finally did go to CADAS, she was intoxicated. The court found that she "[f]ailed to comply with instructions, failed to attend New Freedom classes, did not do community service, did not provide a DNA sample or pay the fee for such, was constantly late, [and] was noncompliant the entire time" that she was in community corrections. The court noted that she destroyed Hamilton County property by cutting off her house arrest band and then absconded to Knoxville where she was arrested "because she was on a no-trespass list" at Walmart. The court characterized Defendant as a "serial thief[,]" which was "a real feat for somebody as young as [Defendant.]" The court concluded that Defendant had "not done one single thing that would merit another chance. Nothing."

Following a hearing, the trial court revoked Defendant's community corrections sentence and ordered her to serve the balance of her sentence.

Defendant timely appealed.

*Analysis*

Defendant contends that the trial court abused its discretion by revoking her community corrections sentences and ordering her to serve her sentences in confinement. Defendant claims that the trial court should have ordered her into a mandatory drug

- 4 -

treatment program. The State argues that the trial court acted within its discretion. We agree with the State.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court. *State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"); *see also State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013) (holding that an abuse of discretion standard with a presumption of reasonableness applies to all sentencing decisions). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the violation. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2000) (citing *Harkins*, 811 S.W.2d at 82. A violation of probation or community corrections need only be proven by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(e)(1) (2019); *see also* Tenn. Code Ann. § 40-36-106(e)(3)(B) (2019). If the evidence is sufficient to show a violation of the terms of supervision, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence in confinement "less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (2019).

There was overwhelming evidence admitted during the revocation hearing to prove that Defendant violated the conditions of her Community Corrections Behavior Contract. Defendant failed to complete the mandatory drug program with CADAS, failed to comply with numerous instructions concerning house arrest, failed to complete New Freedom classes, did not do her community service, did not provide a DNA sample or pay the fee, was constantly late in reporting to her community corrections officer, and tested positive for numerous drugs numerous times. Defendant removed her house arrest band and absconded to Knoxville where she was arrested on new charges. The trial court did not abuse its discretion by revoking Defendant's community corrections sentences and ordering her to serve her sentences in confinement.

### *Conclusion*

In consideration of the foregoing, we affirm the judgment of the trial court revoking community corrections and ordering Defendant to serve the balance of her sentence.

_____
ROBERT L. HOLLOWAY, JR., JUDGE