IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

**STATE OF TENNESSEE v. ERIC DESHAWN WEBB**

**Appeal from the Circuit Court for Maury County**
**No. 27308[1]     Christopher Sockwell, Judge**

_____

**No. M2022-01235-CCA-R3-CD**

_____

The defendant, Eric DeShawn Webb, appeals the Maury County Circuit Court's partial denial of his motion to reduce his sentence filed pursuant to Tennessee Rule of Criminal Procedure 35, and imposition of an effective 10-year sentence for his guilty-pleaded convictions of aggravated rioting and aggravated assault. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and MATTHEW J. WILSON, JJ., joined.

William C. Barnes, Columbia, Tennessee, for the appellant, Eric DeShawn Webb.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Brent Cooper, District Attorney General; and Pam Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Maury County Grand Jury charged the defendant with one count of aggravated rioting and one count of aggravated assault for events occurring on January 30, 2019, in the Maury County jail and resulting in injuries to Correctional Officer Don Tilley. The defendant entered an open plea, pleading guilty as charged with the court to determine the sentence. The State provided the following recitation of facts at the plea submission hearing:

_____

[1] The defendant's brief indicates that he is appealing the total effective sentence imposed in this case and case 27888. His notice of appeal, however, appeals only the judgment in this case, and the record does not include a technical record, transcripts, or judgments for case 27888. Accordingly, we will consider the issue only as it relates to this case.

[O]n January 30th of 2019, the defendant was housed as an inmate in the Maury County Jail here in Maury County. He had recently been upgraded to a more secure section of the jail as a result of certain disciplinary write-ups that had been done by [O]fficer Don Tilley.

On this particular occasion, January 20th, there were a number of inmates that had been in the main room for recreation. When time came for the inmates to return to their cells, various members of the group refused to do so and a riot ensued.

The defendant engaged in that riot and, along with other individuals, began attacking, specifically, Officer Don Tilley. As a result of the attack by [the defendant] and other individuals, Officer Tilley sustained serious bodily injury.

He received a cut to the mouth area which resulted in stitches and a permanent scar. He also received a fracture to a portion of his leg. It was confirmed by an MRI. That injury resulted in him being absent from his work duties for, approximately, a month and not being able to put weight on that knee. It did ultimately heal, however.

Also, the defendant had a disciplinary hearing relating to this incident. And during that reported disciplinary hearing, he did confirm that part of the reason for the attack on Officer Tilley, specifically, was the result of the write-ups that had caused him to be in maximum security.

On July 18, 2022, the trial court held a joint sentencing hearing for this case and case number 27888. We will recite only the facts related to this case. The State exhibited the defendant's presentence report to the hearing.

Correctional Officer Don Tilley testified that on January 30, 2019, inmates who were housed in a maximum-security area "refus[ed] to go up" to their cells at the end of a one-hour recreation time and were "actively doing everything they could not to return to their cells" despite officers' asking them to move to their cells "several times." The correctional officers "exited the area to get more resources to devise a plan," and when they reentered the area, "[o]ne officer began to get into a verbal altercation with one

inmate." When that inmate "did a chest bump on that officer, . . . I proceeded to spray that inmate. That inmate then turned and started to physically fight me." The defendant then attacked Officer Tilley "from behind along with three other inmates." Officer Tilley "was knocked down . . . approximately seven" times. He sustained several injuries that required him to miss a substantial amount of work and caused him to suffer permanent effects.

Officer Tilley testified that since he returned to work, the defendant threatened him several times. Once, the defendant told Officer Tilley that "once he was released from jail . . . 'Man, I'm gonna smoke you.'" On another occasion, the defendant "indicated that I needed to watch my back when I'm walking around Columbia come September when he gets out." In another incident, the defendant "indicated over [the] intercom, 'We broke your leg once. We'll break your neck the next time.'" The defendant has continued to receive disciplinary write-ups since the riot. Officer Tilley explained that the defendant's behavior toward him has "a major impact" on officer safety in the jail, noting that "[i]t makes the jail not safe at times." He also said that "disruptive inmates" cause "stress . . . on new employees" at the facility.

During cross-examination, Officer Tilley testified that his primary injury was to his leg from where his knee kept "hitting the floor" as he was repeatedly "knocked down." He said that the defendant last threatened him "about three months ago." On redirect examination, Officer Tilley said that the defendant threatened him on March 24, 2019, and December 12, 2020, and that both incidents were recorded in incident reports.

The defendant testified that at the time of the hearing, he had been detained at the Maury County jail for three years and nine months. He said that some time prior to the riot, Officer Tilley "said a racial slur to me" and that the defendant had "been holding a grudge" toward the officer. He said that the cells were designed to house two men but that four to five men were being held in each cell. In his cell, the toilet was leaking on the floor, and officers had just assigned a fifth man to his cell. He explained that when the inmates refused to leave the recreation area "[w]e was trying to protest" the conditions and overcrowding; "[W]e wanted to talk to a lieutenant or a sergeant."

The defendant said that he had "apologized to Officer Tilley several times." He said that he also had "been trying to get help. I've been taking classes, GED classes, trying to get my life right." He acknowledged that he had been kicked out of the GED classes because of an altercation with another inmate. The defendant denied threatening Officer Tilley but acknowledged, "I'll say things I'm not supposed to say."

During cross-examination, the defendant acknowledged that his prior criminal history included a conviction for unlawful possession of a firearm and convictions

-3-

as a minor for aggravated robbery and unauthorized use of a vehicle. He also acknowledged that he had been cited for multiple disciplinary infractions while at the Maury County jail. On redirect examination, the defendant said that he had not had many disciplinary write-ups since 2021 because he was "try[ing] to work on myself" and "trying to get help."

At the close of evidence, the trial court determined that the maximum sentence was necessary to deter the defendant's violent behavior. The court found that as related to the aggravated assault, Officer Tilley "was not interacting with [the defendant]" when the defendant attacked him "from behind" and that the defendant "continued to hit him from behind and continued to hit him in the head and neck area" while the officer "tried to retreat." The court further found that Officer Tilley "fell forward next to the wall where he could have fallen easily or . . . could have been struck into bars, into the wall, whatever it might be. That was an extremely dangerous situation that [the defendant] has not been able to recognize as being a danger to those around him." The court sentenced the defendant as a Range II offender to four years for the aggravated rioting conviction and 10 years for the aggravated assault conviction. In imposing consecutive sentences, the court noted that the defendant attacked Officer Tilley while the officer was "trying to get away" and that it was "pretty egregious, . . . one of the worst forms of violence that I can think of." The court also considered that the defendant made threatening and intimidating statements after the incident, stating, "This [c]ourt cannot condone that and, in fact, condemns it at the highest level." The court continued: "What this [c]ourt is probably more afraid of than anything is that those violent ways will continue if he got out in public." The court also aligned the sentences consecutively to a six-year sentence in case 27888.

On August 10, 2022, the defendant moved for a reduction of his sentence pursuant to Tennessee Rule of Criminal Procedure 35, arguing that the sentence "is excessive and improper in length, range, and manner of service" and that consecutive alignment "was also improper." After a hearing on the motion, the trial court reclassified the defendant as a Range I offender for the aggravated assault, Class C felony conviction and resentenced him to six years on that conviction. The court declined to further reduce the sentence or change the consecutive alignment of the sentences, resulting in an effective 10-year sentence.

The defendant timely appealed,[2] reasserting his argument that the sentence

---

[2] The defendant's notice of appeal, filed September 1, 2022, is timely as it relates to the trial court's ruling on the motion to reduce his sentence. The ruling occurred on August 17, 2022. Because a motion to reduce a sentence does not toll the 30-day limitation on the notice of appeal, *see* Tenn. R. App. P. 4(c) (excluding a motion to reduce a sentence under Tennessee Rule of Criminal Procedure 35 from those

was excessive and that consecutive alignment was improper. The State argues that the trial court did not abuse its discretion in imposing the sentence.

Criminal Procedure Rule 35 permits a trial court to "reduce a sentence upon motion filed within 120 days after the date the sentence is imposed." Tenn. R. Crim. P. 35(a). Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Irick*, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993) (applying an abuse of discretion standard to appellate review of a Rule 35 ruling prior to the adoption of the abuse of discretion standard for general sentencing review articulated in *Bise*). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant. . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

The standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, our supreme court held that the trial court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct before utilizing the "dangerous offender" category to impose consecutive sentencing, *see State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995), and "[t]he adoption of the abuse of discretion standard with the presumption of reasonableness has not eliminated this requirement," *Pollard*, 432 S.W.3d at 863.

---

motions that toll the time for filing a notice of appeal), we note that an appeal of his original sentence would have been untimely, *see id.* 4(a) (requiring the notice of appeal to be filed within 30 days "after the date of entry of the judgment appealed from") *see also id.* 3(a) (providing for an appeal as of right from an adverse ruling on a Rule 35 motion).

As a Range II offender, the defendant was subject to a sentencing range of two to four years for aggravated rioting, a Class E felony. *See* T.C.A. §§ 39-17-303(b), 40-35-112(b)(5). As a Range I offender, the defendant was subject to a sentencing range of three to six years for aggravated assault, a Class C felony. *See id.* §§ 39-13-102(e)(1)(A)(ii), 40-35-112(a)(3). Because the trial court properly articulated its reasons for imposing the within-range sentences at the original sentencing hearing, the court did not abuse its discretion in declining to further reduce the defendant's sentences.

We also conclude that the trial court did not abuse its discretion in declining to reconsider the consecutive alignment of the sentences. Although not explicitly stated in its original findings, the trial court implicitly found that the defendant was a dangerous offender when it repeatedly stated its concern that the defendant attacked Officer Tilley from behind and continued to attack while the officer tried to retreat. Again, although not explicitly stated, the trial court made sufficient findings to satisfy the *Wilkerson* factors. The court emphasized the "egregious" nature of the defendant's conduct, noting that it was "one of the worst forms of violence." The court also expressed grave concern that the defendant's violent behavior posed a danger to society. In our view, these findings were sufficient to support the original imposition of consecutive sentencing, and the trial court did not abuse its discretion by declining to reconsider that ruling. The defendant has failed to show that the trial court abused its discretion in concluding that the interests of justice did not require a modification of the original sentence.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-