IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 13, 2025

## STATE OF TENNESSEE v. CHRISTOPHER ALAN AYOTTE

**Appeal from the Criminal Court for Davidson County
Nos. 2023-A-122, 2023-B-1260    Steve R. Dozier, Judge**

_____

### No. M2024-01529-CCA-R3-CD

_____

The defendant, Christopher Alan Ayotte, pled guilty to one count of sexual exploitation of a minor with greater than one hundred images, two counts of rape of a child, two counts of aggravated sexual battery, and one count of rape. After a sentencing hearing, the trial court ordered an effective sentence of one hundred and twenty-four years in confinement. On appeal, the defendant contends the trial court erred in sentencing him. Upon review of the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court but remand for entry of a corrected judgment form as to Count One of Case No. 2023-B-1260 reflecting the defendant's multiple offender status.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed, Remanded for Corrected Judgment**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Timothy Carter, Whiteville, Tennessee, for the appellant, Christopher Ayotte.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jeffrey George, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On February 8, 2023, a Davidson County Grand Jury returned two indictments charging the defendant in Case No. 2023-A-122 with two counts of sexual exploitation of

a minor, thirteen counts of especially aggravated sexual exploitation of a minor, five counts of rape of a child, ten counts of aggravated sexual battery, one count of robbery, and one count of vandalism. In the second indictment, Case No. 2023-B-1260, the defendant was charged with nine counts of rape. On September 15, 2023, the State filed a notice of intent to seek enhanced punishment based upon the defendant's prior convictions in Tennessee and Ohio.

In May of 2024, pursuant to a plea agreement, the defendant pled guilty in Case No. 2023-A-122 to: Count 1 – Sexual Exploitation of a Minor with One Hundred or More Images (Class B Felony); Count 4 – Rape of Na.B.[1] (Class A Felony); Count 8 – Aggravated Sexual Battery of M.W. (Class B Felony); Count 10 – Aggravated Sexual Battery of L.S. (Class B Felony); and Count 12 – Rape of No.B. (Class A Felony). In Case No. 2023-B-1260, the defendant pled guilty to Count 1 - Rape of L.N. (Class B Felony). The defendant further agreed to allow the trial court to determine the range, length, and manner of service of his sentences.

During the plea colloquy, the trial court reviewed the basis of the negotiated plea with the defendant, and the following exchange occurred:

> THE COURT: And is the State alleging, or is it agreed, that [defendant] either legally would be sentenced as a Range II offender based on the law or his prior record?
>
> STATE: I believe that he's a Range II offender on the B felonies based on his prior record; and on the rape of a child based on the statute.
>
> THE COURT: The law, yeah. And any issue on that [trial counsel]? I know that that's how you - -
>
> TRIAL COUNSEL: That would be my estimation as well. He seems to be Range II, so there is no – it is somewhat confusing. But he seems to be Range II on the B and Range I on the A. But obviously that –
>
> THE COURT: Okay. The second case, [defendant] charges you with several offenses . . . .

---

[1] It is the policy of this Court to refer to victims of a sexual offense by their initials only. Additionally, in order to further protect the identity of the minor victims, we will refer toe Na.B.'s mother by her initials as well. No disrespect intended.

- 2 -

At the conclusion of the plea hearing, the trial court determined the defendant was knowingly and intelligently pleading guilty.

On August 22, 2024, a sentencing hearing was held. At the outset, the State entered the defendant's presentence report into evidence without objection by the defendant. The State then presented the testimony of A.L., Na.B.'s mother. A.L. testified that she allowed the defendant to live with her after he was released from jail and placed on probation. On September 22, 2022, she entered the room where the defendant was asleep in order to wake him. According to A.L., the defendant was due to meet with his "parole" officer that morning and had overslept. A.L., noticing the defendant's cell phone was on and unlocked, took his phone and exited the room. Once she was outside, she began to search the defendant's phone. A.L.'s search revealed pornographic images of the defendant sexually abusing her daughter, Na.B. In the images, A.L. recognized her daughter's face and bedroom and the defendant's body and bracelet. A.L. transferred the images to her cell phone and confronted the defendant. Upon learning what A.L. had done, the defendant physically overpowered her and seized her cell phone. In an effort to destroy the images, the defendant smashed A.L.'s and his cell phones and fled the scene. A short time later, the defendant returned to A.L.'s home, began banging on her door, and yelling repeatedly, "[i]t's not my fault."

Additionally, A.L. testified that the defendant destroyed her family and that he has no shame for what he has done. She believed he should be incarcerated for as long as possible, "[f]orever." The State also entered a victim impact statement written by A.L. into the record.

The State then presented the testimony of Detective Christian Martin with the Juvenile Sexual Assault Unit of the Youth Services Division of the Metro Nashville Police Department. Det. Martin testified that on September 22, 2022, he responded to A.L.'s residence and interviewed the defendant. During his interview, the defendant admitted to having "somnophilia" or being sexually aroused by people sleeping. The defendant denied having a sexually transmitted disease and discussed with Det. Martin his experience as a victim of sexual abuse.

Next, the State presented the testimony of Detective Rob Carrigan with Nashville's Metro Police Department's Internet Crimes Against Children Task Force. Det. Carrigan testified that on September 27, 2022, working independently of Det. Martin's investigation, he executed a warranted search of the defendant's cloud storage system for evidence pertaining to child pornography. The search was instigated pursuant to a "cyber tip" received from the National Center for Missing and Exploited Children (NCMEC). Authorities traced the username to an IP address linked to A.L.'s residence.

Subsequently, Det. Carrigan's investigation revealed that the defendant's cloud storage system contained several hundred images and videos depicting the sexual abuse of children that the defendant had obtained from the internet, as well as images and videos the defendant had produced himself. Upon discovering the defendant was creating child pornography, Det. Carrigan ran the defendant's name through the police database and discovered he had recently been arrested for a similar offense.

On October 6, 2022, Det. Carrigan received a second cyber tip from the NCMEC which led to the discovery of an additional cloud storage account belonging to the defendant. Through analyzing the information stored on the defendant's online storage accounts, Det. Carrigan was able to identify another victim, L.N., a mother and her young daughters, L.S. and M.W., with whom the defendant had resided. The online cloud storage included pornographic images of the defendant engaged in sexual abuse of L.N., L.S., and M.W. Ultimately, Det. Carrigan's investigation yielded images and videos of child sexual abuse by the defendant of multiple victims of multiple ages of multiple families and of multiple offenses, as well as sexual abuse of L.N. while she was unconscious or asleep.

Det. Carrigan also testified that after twenty years of working child sex abuse cases and three thousand cases over that period, he would rank the defendant in the top two or three offenders. In comparing the defendant to other suspects, Det. Carrigan stated, "I've seen worse videos, individually in other cases, but as a whole, show a pattern of abusive and sexual abuse behavior that's at a different level than most of my clientele over this (*sic)* years." Lastly, a victim impact statement by L.N. was entered into evidence.

The defendant presented the testimony of Ashley Collins, a mitigation specialist and private investigator with AK Investigations. Ms. Collins testified that as a mitigation specialist she "collects and then digests records . . . to help understand how the client arrived at the charges . . . . So, it's like making a map of someone's life and attempting to understand what [led] them here." In the instant case, she obtained the defendant's records from various treatment facilities and the Department of Children's Services (DCS). From the defendant's records, Ms. Collins testified to the following series of events:

During the defendant's early childhood, his parents lost custody of him after he was found wandering naked in his apartment complex looking for food, and his paternal grandparents were awarded custody. Within a few years, the defendant reported he was sexually abused by his paternal uncle. At the age of ten, he was diagnosed with a "mood disorder with depressive systems" and attention deficit hyperactivity disorder. The records also noted that at this age the defendant's grandparents began physically abusing him, including forcing him to live in a doghouse as punishment for bad behavior.

- 4 -

When the defendant entered adolescence, he was sent to Chad Youth Enhancement Center. He told Ms. Collins that while there he was raped by a peer. When the defendant was fourteen years old, his DCS records reflected a report of physical abuse by his paternal grandfather. The records showed DCS conducted a home visit which resulted in concern about returning the defendant into the grandparent's custody, but no action was taken. During the same period, the defendant was "regularly" beaten up at school, causing him to bring a knife "for protection." His records from Youth Villages showed that around this same time the defendant began to hear voices that told him, "[h]e was stupid and that he should hit people." On cross-examination, Ms. Collins testified that these events in the defendant's life, while sometimes included in the defendant's DCS records, were sometimes unsubstantiated and did not result in criminal charges. Ms. Collins also testified that the defendant's claim of sexual assault while in the juvenile center was reported only to her.

In his late teen years, the defendant underwent a psychosexual evaluation. The evaluation was prompted when his father discovered the defendant touching the family's dog inappropriately. However, the evaluation determined that no treatment was warranted, because the behavior was considered mild and occurred only once. Prior to being discharged from the State's care, the defendant was placed in a foster home with an "older woman who was pretty strict." Ms. Collins testified that this "harsh structure" had a positive effect on the defendant's behavior.

After the defendant was released from the State's care, the defendant joined the National Guard and completed basic training. However, due to an illness, the defendant was ultimately discharged and became homeless. At some point in time, the defendant married and fathered a child with whom he did not reside, although he would like a relationship in the future. Ms. Collins testified that since being incarcerated, the defendant had become sober and "maintained a community by becoming faithful." When asked during cross-examination how the defendant described the events leading to his current convictions, Ms. Collins testified that the defendant had only characterized them as a "kind of sickness" and as "consensual behavior between people he was dating."

Lastly, Ms. Collins testified that while investigating the defendant's case, she researched a study in the 2001 British Journal of Psychiatry that found a link between victims of child abuse becoming perpetrators of child abuse. Ms. Collins acknowledged, however, during cross-examination, that other studies had found conflicting results.

The defendant testified on his own behalf stating, "words alone cannot atone for this situation," and "I'm overwhelmed by all of this." The defendant testified that while he could not change the past, he wanted to seek forgiveness and to move forward.

Once the proof was presented, the trial court heard argument from the State. In determining whether the defendant should be sentenced consecutively or concurrently, the State contended the trial court should impose consecutive sentences upon the defendant based upon several factors enumerated in Tennessee Code Annotated section 40-35-115. Initially, the State argued consecutive terms were appropriate based upon the defendant's four prior felony convictions, in addition to a fifth-degree felony in Ohio. *Id.* § 40-35-115(2). Furthermore, the State argued that "the defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern repetitive or compulsive behavior with heedless indifference to consequences." *Id.* § 40-35-115(3). Finally, the State argued the defendant's two convictions for rape of a child weighed greatly in favor of consecutive sentencing because the defendant violated a position of trust of multiple children in undetected activity from Spring of 2019 to Fall of 2022. *Id.* § 40-35-115(5).

Next, the State argued the trial court should apply several enhancement factors to the defendant's sentence pursuant to Tennessee Code Annotated section 40-35-114. The State restated the defendant's criminal history as evidence supporting the application of enhancement factor (1). The State also argued that enhancement factor (3) should be applied as there were multiple victims. Enhancement factor (4) was also applicable because the victims were "especially vulnerable, not only just because of their ages, but because they were asleep when these offenses are happening." Additionally, the State asked for enhancement factor (7) to apply as the defendant was committing the crimes to gratify his pleasure, and enhancement factor (14), because the defendant abused a position of trust. *Id.* § 40-35-114 (1), (3), (4), (7), (14).

The defendant asked the trial court for leniency, arguing that by pleading guilty he took responsibility for his actions. As to the conviction for the rape of L.N., the defendant asked the trial court to consider that drugs were an "issue [and] cause horrible situations and poor choices, not – again, not an excuse, just an explanation about his behavior." Ultimately, the defendant asked the court to find an appropriate sentence and to sentence him concurrently, "to allow him to hopefully have a life while he has some time left with us here."

After hearing the evidence and arguments presented at the hearing, the trial court took the matter under advisement. On September 9, 2024, the trial court issued its sentencing order. In making its sentencing determination, the trial court noted that it had considered,

> (1) the evidence it received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing; (4) the nature and

characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) statistical information provided by the administrative office of the courts as to the sentencing practices for similar offenses in Tennessee; (7) defendant's statements made on defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

After reviewing the factors enumerated in Tennessee Code Annotated section 40-35-114, the trial court found the following enhancement factors applicable: (1) the defendant has a previous history of criminal convictions; (4) the victim of the offense was particularly vulnerable because of age; (7) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; (13)(C) at the time of the felon[ies were] committed, one of the following classifications were applicable to the defendant: Released on probation; (14) the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or the fulfillment of the offense. *Id.* § 40-35-114. While the trial court found factors (1) and (7) applied to each of the defendant's convictions, it determined that factor (4) only applied to Counts 4 and 12; factor (13)(C) applied to Counts 1, 4, 8, 10, and 12; and factor (14) applied to Counts 4, 8, 10 and 12 in Case No. 2023-A-122 and Count 1 in Case No. 2023-B-1260.

As to mitigating factors, the trial court acknowledged the mitigation report created by the defendant and considered it under the "catch all" mitigation factor pursuant to Tennessee Code Annotated section 40-35-113(13). The trial court placed no substantial weight on that factor.

In determining the length of service, the trial court found the defendant was a Range II offender for each conviction, and it imposed the following sentences to be served at 100% (or without release eligibility):

In Case No. 2023-A-122: Count 1, sexual exploitation of a minor with greater than one hundred images/materials, a class B felony: twenty years; Count 4, rape of Na.B., a class A felony: thirty-five years; Count 8, aggravated sexual battery of M.W., a class B felony: eighteen years; Count 10, aggravated sexual battery of L.S., a class B felony: eighteen years; and Count 12, rape of No.B., a class A felony: thirty-five years.

In Case No. 2023-B-1260: Count 1, rape of L.N., a class B felony, eighteen years.

- 7 -

With regard to the manner of service, the trial court recognized the defendant was ineligible for probation due to the length of his sentence being greater than ten years and the statutory prohibition for his convictions in Counts 1, 8, and 10. The trial court also found the defendant was not eligible for a sentence of community corrections and did not qualify for any other form of alternative release.

In the determination of whether to run the defendant's sentences concurrently or consecutively, the trial court found by a preponderance of the evidence the following factors applied: (2) the defendant is an offender whose record of criminal activity is extensive; (5) the defendant was convicted of two or more offenses involving sexual abuse of a minor; (6) the defendant is sentenced for an offense committed while on probation; (8) the defendant is convicted of two or more offenses involving sexual exploitation of a vulnerable adult; (10) the defendant is convicted of two or more offenses involving more than one victim. While the trial court found that factors (2), (5), and (10) applied to all of the defendant's convictions, it found that factor (6) applied specifically to Count 4 and factor (8) applied to Count 1 of Case No. 2023-B-1260.

In consideration of the above factors, the trial court determined that Counts 1 and 4 of Case No. 2023-A-122 would be served concurrently with each other, and Counts 8, 10, and 12 of Case No. 2023-A-122, and Count 1 of Case No. 2023-B-1230 would each follow Count 4 to be served consecutively. Ultimately, the trial court imposed an effective sentence of one hundred and twenty-four years to be served in confinement with the Tennessee Department of Correction.[2] This timely appeal followed.

### *Analysis*

On appeal, the defendant contends the trial court erred by (1) sentencing him as a Range II offender without sufficient proof in the record, (2) not considering the evidence of the mitigation factors presented at the hearing, and (3) ordering some of his sentences to run consecutively. The State contends the trial court did not abuse its discretion in this imposition of sentences upon the defendant. We affirm the trial court's judgments.

---

[2] The trial court also imposed that if at any time the defendant should be released, he would be placed on the sexual offender registry for life, including lifetime supervision. Tenn. Code Ann. § 40-39-201, *et al.;* § 39-13-522(b)(2)(B).

## I. Offender Classification

The defendant argues that the trial court improperly relied upon his presentence report to sentence him as a Range II offender.[3] Specifically, the defendant argues that the trial court erred in finding the State satisfied its burden of proving the defendant's prior convictions. The State counters that the defendant agreed to be sentenced as a Range II defendant, and if not agreed, he waived this issue. We agree the defendant waived this issue.

In this case, the defendant was sentenced as a Range II offender on all convictions. The State contends that the defendant agreed to this classification at the plea hearing, but the record does not support that contention. When asked about range classification, trial counsel expressed uncertainty, describing the matter as "somewhat confusing" and remarking that the defendant was "Range I on the A." Before counsel could clarify further, the court moved on, and the issue was not revisited.

Thus, while counsel's comments may be read as addressing the A felonies, the record contains no objection or concession regarding the B felonies. To the contrary, the Petition to Enter Plea of Guilty, signed by both the defendant and the State, left the determination of offender classification to the court. Accordingly, the record does not establish that the defendant agreed to be sentenced as a Range II offender, whether for the A felonies or the B felonies.

That said, the defendant has clearly waived any objection to his offender classification. This Court has repeatedly held that a defendant's failure to object to his offender classification will result in waiver. *See State v. Gordon*, No. W2021-01190-CCA-R3-CD, 2023 WL 2375707, at *3 (Tenn. Crim. App. March 7, 2023), *no perm. app. filed*; *State v. Clemmons*, No. M2017-01756-CCA-R3-CD, 2018 WL 3116636, at *2 (Tenn. Crim. App. June 25, 2018), *perm. app. denied* (Tenn. Oct. 10, 2018); *State v. Taylor*, No. E2007-02350-CCA-R3-CD, 2008 WL 2670180, at *3 (Tenn. Crim. App. July 9, 2008), *perm. app. denied* (Tenn. Jan. 26, 2009). Here, the State gave notice it planned to seek an enhanced offender status based upon an enumerated list of prior convictions. At the sentencing hearing, the State entered into evidence the presentence report which contained those prior convictions. The trial court then relied upon the presentence report in determining the defendant to be Range II status. At no time did the defendant object to or challenge the accuracy of the convictions listed in the State's Notice of Intent to Seek Enhanced Sentence or the presentence report. Accordingly, this issue is waived.

---

[3] This issue on appeal is not applicable to Counts 4 and 12 of Case No. 2023-A-122, class A felonies for rape of a child for which Range II sentencing is statutorily mandated under Tennessee Code Annotated section 39-13-522(2).

## II.     Application of Mitigating Factors and Consecutive Sentences

In determining an appropriate sentence, a trial court must consider the following factors:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf; and (8) the result of the validated risk and needs assessment. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b).  In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed."  *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only.  *See* Tenn. Code Ann. § 40-35-114, -210(c).  The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them.  *See id.* § 40-35-210(c).  Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114."  *Id.* § 40-35-210(b)(5).  The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing."  *Id.* § 40-35-210(e).  The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court.  *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008).  The burden of proving applicable mitigating factors rests upon defendant.  *State v. Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995) (citation omitted).  The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act.  *Carter*, 254 S.W.3d at 345 (citing *State v. Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

### A. Mitigating Factors

Here, the defendant challenges the trial court's "disregard" of the "catch all" mitigation factor (13).  Tenn. Code Ann. § 40-35-113(13).  While the trial court did not articulate findings on the record to explain explicitly why it did not give great weight to factor (13), the record reflects that the trial court considered the defendant's arguments and that it acted within its discretion in rejecting them.  The law does not require the trial court to "explicitly discuss" each mitigating factor; it only requires that the trial court "consider"

them. *State v. Dunn*, No. E2021-00343-CCA-R3-CD, 2022 WL 2433687, at \*19 (Tenn. Crim. App. July 5, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). The trial court expressly considered the mitigating factor and, therefore, complied with its obligations under the Sentencing Act. Therefore, this issue is without merit.

### B. Consecutive Sentencing

The defendant next challenges the trial court's decision to impose consecutive sentences.[4] Specifically, the defendant argues the trial court abused its discretion by erroneously basing its determinations on Tennessee Code Annotated section 40-35-115(b)(2), (6), (8), (10). The State contends the trial court did not abuse its discretion. We agree with the State.

In *State v. Pollard*, the Tennessee supreme court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *State v. Pollard,* 432 S.W.3d 851, 859 (Tenn. 2013). Under the expansion, the trial court has the sound discretion to determine whether a sentence should be served concurrently or consecutively. *Id*. at 860. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated § 40-35-115(b)." *Id*. at 861. "Any one of [the] grounds [listed in § 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)).

The defendant contends that the trial court's application of Tennessee Code Annotated section 40-35-115(2), that the defendant is an offender whose record of criminal activity is extensive, while only noting the defendant's criminal history, does not adequately explain the trial court's reasoning to categorize him as a "danger to the public." Here, the record supports the trial court's determination. As the trial court noted, the defendant's record consists of five felonies and multiple misdemeanors. The defendant's presentence report, entered into evidence by the State, documented his criminal history. Based on this proof, the trial court did not abuse its discretion in finding the defendant has an extensive criminal history and imposing consecutive sentences based upon that finding. Tenn. Code Ann. § 40-35-115(b)(2).

Though the finding of one consecutive sentencing factor is sufficient to sustain the sentence imposed, we will, nevertheless, address each of the defendant's remaining claims.

---

[4] The trial court's imposition of consecutive terms applies to Counts 4, 8, 10, and 12 of Case No. 2023-A-122 and Count 1 of Case No. 2023-B-1260.

The defendant also disputes the trial court's application of Tennessee Code Annotated section 40-35-115(b)(6), that the defendant is sentenced for an offense committed while on probation, arguing that the record is inadequate to show that each count for which the defendant pled guilty was an offense committed while the defendant was on probation. Here, the trial court noted in the Sentencing Order that this factor was "applicable specifically to Count 4." Further, the trial court found by a preponderance of the evidence that the defendant raped the victim in Count 4 in September of 2022 while the defendant was on probation. This finding by the trial court is supported by the record. At the sentencing hearing, A.L. testified that the defendant was on probation in September of 2022. In addition, the record reflects the defendant's online cloud storage included time-stamped images of the defendant raping the victim of Count 4, Na.B., in September of 2022. Accordingly, the trial court did not abuse its discretion by imposing consecutive terms. Tenn. Code Ann. § 40-35-115(b)(6).

Next, the defendant argues that the trial court erred in its application of Tennessee Code Annotated section 40-35-115(b)(8), that the defendant was convicted of two or more offenses involving sexual exploitation of a vulnerable adult. The defendant argues that his conviction of Count 1 of Case No. 2023-B-1360, rape of L.N., was his only conviction involving an adult. The State concedes this was an error by the trial court. While the defendant was indicted for multiple counts of rape of an adult, pursuant to his plea agreement, he was convicted of only one count. Therefore, we conclude the trial court's reliance on section 40-35-115(b)(8) was erroneous.

Lastly, the defendant disputes the trial court's application of Tennessee Code Annotated section 40-35-115(b)(10), the defendant is convicted of two or more offenses involving more than one victim, as a grounds for imposing consecutive sentencing. Here, the trial court's application was an error. The State presented testimony by Det. Carrigan that the defendant's offenses occurred between the Spring of 2019 and Fall of 2022. At the time of the defendant's offenses, Tennessee Code Annotated section 40-35-115(b)(10) was not in effect.[5] Therefore, its application was an error.

Although the trial court erred in its application of Tennessee Code Annotated sections 40-35-115(b)(8) and (10), its reliance upon subsections (2), (5), and (6) as grounds for imposing consecutive sentencing was supported by the record. Further, the trial court meticulously noted its reasonings for its application on the record. Accordingly, this Court finds no cause to question the trial court's exercise of discretion. This issue is without merit.

---

[5] Tenn. Code Ann. § 40-35-115 (2022).

**III.    Judgment Form**

Finally, we detect an error in the entry of the judgment form for Count 1 of Case No. 2023-B-1260.  The trial court noted in the "Offender Status" box that the defendant was a "Standard" offender; however, the trial court's determination that the defendant be sentenced as a Multiple Offender is affirmed.  Therefore, we must remand the case to the trial court for entry of corrected judgment form showing the defendant as a "Multiple" offender.

### *Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed, but we remand for entry of a corrected judgment as specified in this opinion.

s/ **J. ROSS DYER**
J. ROSS DYER, JUDGE